THOMAS J. COOLIDGE *vs.* WILLIAM S. DEXTER.

Suffolk. March 24. — July 3, 1880. AMES & LORD, JJ., absent.

A mere reference to a plan, in the descriptive part of a deed of a lot of land, does not import a stipulation by the grantor that the plan shall not, in any respect, be subsequently changed in parts not adjacent to the land sold.

MORTON, J. This is an action of contract upon a written agreement, by which the plaintiff agreed to sell and the defendant agreed to buy a lot of land on Marlborough Street in Boston, the plaintiff stipulating that he would convey a good title, free from incumbrances. The defendant refuses to perform the agreement, upon the ground that the plaintiff is not able to give a good title.

The plaintiff's title is derived from the Commonwealth of Massachusetts, under a deed dated May 31, 1872. It is admitted that the Commonwealth, in and prior to the year 1857, was seised in fee of a large tract of land known as the Back Bay lands, of which the premises in question are a part, and that the title of the Commonwealth continued until the sale to the plaintiff; but the defendant contends that, by the acts of the Commonwealth between these two dates, the premises became subject to certain easements, so that the deed to the plaintiff did not convey a title free from incumbrances. The facts bearing upon this question are in substance as follows:

In 1857, the Back Bay commissioners prepared a plan for the laying out and improvement of the Back Bay lands, which was made a part of their fifth annual report to the Legislature. On this plan is represented a rectangular piece of land bounding on Beacon Street, Exeter Street and Marlborough Street, which, though not so designated, appears to be intended for a public

square, and on the east of this square is a passageway forty feet wide. After the adoption of this plan, the commissioners, under the authority of the Legislature, sold to various individuals lots of land lying east of Dartmouth Street, and in the several deeds reference was made to this plan.

Afterwards, and before the sale to the plaintiff, the Commonwealth made changes in this plan, by which the said square and forty-foot passageway were discontinued, and the land covered by them appropriated to building purposes.

The plaintiff's lot is situated partly on the square and partly on the passageway; and the ground taken by the defendant is, that the deeds of the lots east of Dartmouth Street gave to the grantees an interest in the nature of an easement in the square and passageway, and estopped the Commonwealth from ever afterwards appropriating the land covered by them on the plan to any other purposes. The deeds of the lots east of Dartmouth Street are substantially alike in form. Each deed conveys to the grantee " a certain parcel of land or flats in the Back Bay so called, bounded and described as follows, . . . . reference being had to the plan accompanying the fifth annual report of the commissioners on the Back Bay, dated January 21, 1857."

The question is whether this general reference to the plan imports a stipulation by the grantor that the plan shall not be in any respect changed in parts remote from and not immediately connected with the lot sold to the grantee.

It is a question of the intent of the parties. At the time this form of deed was adopted, the whole of the land was covered by water, and it was very inconvenient, if not impracticable, to establish physical monuments to mark the boundaries of the lots sold. A reference to the plan was necessary in order to designate with accuracy the lots intended to be conveyed. As was stated by Chief Justice Bigelow, " we do not think that a mere reference to a plan in the descriptive part of a deed carries with it by necessary implication an agreement or stipulation that the condition of land, not adjacent to, but lying in the vicinity of, that granted, as shown on the plan, or the use to which it is represented on the plan to be appropriated, shall forever continue the same so far as it may be indirectly beneficial to the land included in the deed, and was within the power

or control of the grantor at the time of the grant." *Light* v. *Goddard*, 11 Allen, 5, 8. The deeds from the Commonwealth contain no stipulations that the plan shall not be changed in other localities. They do contain express stipulations that " the streets in said Back Bay, on which said premises bound," " shall be forever kept open to be used for all the purposes for which public highways may be lawfully used ; " and that the passageway which forms the rear boundary of the lots sold shall " be kept open and maintained by the abutters in common." It is to be presumed that, if the parties understood that the Commonwealth bound itself to make no changes in the plan of this extensive territory, in deeds so carefully drawn it would have been so expressed. The square and passageway which the Commonwealth by its change of plan discontinued are remote from the lots east of Dartmouth Street ; * they are not connected with those lots, nor necessary for their enjoyment, nor needed to furnish access to them. We are of opinion that the deeds of those lots did not give the grantees any easement or other interest in the square and passageway, and did not operate to estop the Commonwealth from discontinuing them and appropriating the land to other uses.

We have considered this case as if the Commonwealth were merely the private owner of the Back Bay territory. As in this view, which is most favorable to the defendant, he fails to maintain his defence, it is not necessary to inquire whether in its dealings with this territory the Commonwealth acted solely as a private owner, or in regard to the streets and squares in its sovereign capacity, in which case different rules would govern. See *Attorney General* v. *Gardiner*, 117 Mass. 492. The result is, that the plaintiff is entitled to maintain his action.

*Judgment for the plaintiff.*

*L. S. Dabney*, for the plaintiff.

*F. V. Balch*, for the defendant.

*G. Marston*, Attorney General, in behalf of the Commonwealth, was permitted to file a brief.

---

* By a plan used at the argument, the easterly boundary of the land in question appeared to be about four hundred and thirty feet westerly of Dartmouth Street.