# THE CANTON COMPANY vs. THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Dedication—Public Square Marked on Unrecorded Plat, and not re- ferred to in Deeds of Conveyance—Adverse Possession of Land Offered to Public But Not Accepted—Non-User of Easement— Ejectment for Public Easement.*

A conveyance of land calling to bind on an unopened street owned by the grantor operates as a dedication to public use of that street only until it reaches the next street, either opened or unopened, but does not, with- out words to that effect, give to the grantee any interest in the land of the grantor on the opposite side of the street.

When the owner of land conveys parcels thereof described as binding on an unopened street, the property of the grantor, and as bearing certain numbers on the grantor's plat, which plat shows that the street faced on the other side a square or park to be appropriated to the public, also the property of the grantor, but the plat is not recorded or pub- lished, such conveyances, not expressly referring to the square, do not operate to dedicate the same to the public use.

When the owner of land offered to dedicate to public use a part thereof for a square, but before any acceptance of the offer enclosed the pro- posed square and remained in exclusive and adverse possession thereof for more than twenty years, paying taxes thereon, the offer to dedicate is revoked and the title of the owner to the land is valid by ad- verse possession.

Ejectment does not lie by a city to enforce the right of the public to an easement in land alleged to have been dedicated for use as a park or square.*

Mere non-user of an easement for more than twenty years is not con- clusive evidence of its abandonment, but such non-user together with adverse and exclusive possession for more than twenty years of the servient estate, does extinguish the easement.

A dedication of land not accepted by the public may be defeated by an adverse possession of the land.

The Canton Company, being the owner of a large tract of land in Balti- more City, had a plat thereof made, which showed numbered lots fronting on certain proposed streets, and also a public square. Begin- ning with the year 1846, the company conveyed lots binding on streets

---

*Appended to this case as reprinted in 11 L. R. A. N. S. 129, is a note on ejectment for a public easement.

facing the square the lots being described as bearing certain numbers on the Canton Company's plat, but in none of the deeds was mention made of any public square. No plat was ever recorded or any publication thereof made. In 1873, the company executed a mortgage of its property, excepting from the conveyance that portion of it dedicated for public use as a park located on the plat of the company's property. This mortgage was released in 1887. The square was never used by the public, and since 1856 it has been fenced in and exclusively used by the company. Since 1876, it has been assessed for city taxes. In 1906, the city passed an ordinance accepting the dedication of the square. In an action by the city to enforce the right of the public to the use of the park, there was no evidence that the particular plat referred to in the deeds as showing the numbers of the lots conveyed had designated upon it the proposed square. *Held*, that even assuming that the execution of the deeds referring to a plat on which the square was designated as a public park, was an implied covenant by the company with the purchasers to allow its use as a park from which an intent to make a dedication could be inferred, yet the adverse possession of the park by the company by enclosure since 1856, and before the acceptance in 1906, operated to give to the company a title to the land by prescription.

*Held*, further that this adverse possession was not affected by the execution of the mortgage in 1873, because the adverse possession continued for more than twenty years after that date, and the covenants of the mortgage ceased to be operative upon its release in 1887.

*Decided, April 4th, 1907.*

Appeal from the Superior Court of Baltimore City (SHARP, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*Arthur Geo. Brown* and *Edgar H. Gans* (with whom was *R. E. Lee Marshall* on the brief), for the appellant.

The whole evidence disclosed by the record, which in any view may be claimed to throw light upon the intention of the appellant at any period of its ownership of the property is found in the plat of 1845, the plat of 1853, and the mortgage deed of trust of 1873.

The question is, therefore, whether either of these instruments alone, or all together, are legally sufficient to support an implication of an offer to dedicate the premises to the public.

So far as the delineation of the premises on the plats is concerned, and without considering in this connection the effect of a sale of lots by reference thereto, the utmost length to which any case has ever gone is to hold that an offer to dedicate a park or square may be implied by *publishing* or *recording* plats showing the property dedicated as a park or square. But no case has ever held that a dedication to the public can be implied from an *unpublished, unrecorded* plat, constructed and used for the private and personal ends of the owner of the property. *Clendenin* v. *Construction Co.*, 86 Md. 80.

In the case at bar, the plats in evidence were never recorded, nor so far as the evidence shows, were they ever used for any other purpose than to indicate with definiteness the boundaries and locations of the lots belonging to the appellant, and even for such purpose, only used by the appellant itself. It is submitted, therefore, that standing alone, the plats in evidence do not afford any, even the slightest, legal evidence of an intention on the part of the appellant to dedicate the premises; but it was contended by the appellee that even if the plats, standing alone, were insufficient evidence of intention, nevertheless, when considered in connection with the recital in the mortgage deed of trust, the two together satisfied the requirements of the rule, and sufficiently proved an intention on the part of the appellant to dedicate the premises to the public.

Even if it be conceded, for the sake of argument, that such an intention can be presumed from the facts and circumstances referred to, nevertheless, it is universally held that in order to make the dedication valid and complete, it is essential that the public accept the proffered use.

Without an acceptance by the public, no act, or intention of the owner of the premises, however clear, or strong, can create a valid dedication. *Stewart* v. *M. & C. C.*, 7 Md. 500; *State, use of Kennedy*, v. *Cumberland*, 65 Md. 514; *Broumel's case*, 86 Md. 153.

The point now under consideration is that of an offer of the

premises *directly* to the city, as distinguished from an indirect offer enuring to the city through an implied covenant with an individual grantee. The question is, therefore, whether assuming the facts and circumstances disclosed in the record to "*clearly prove*" an intention on the part of the appellant to dedicate the premises to the city, and a corresponding offer thereof directly to the city, there has been a valid acceptance of such assumed offer.

In such case an acceptance may be evidenced in any one of a number of different modes, but the specific and only proof of an acceptance in this case, is contained in the ordinance passed on May 21st, 1906, which, in terms and by neccessary implication, concedes that there had been no acceptance by the city prior to that date.

The plats, dated 1845 and 1853, respectively, and the deed of trust, dated 1873, is the evidence relied upon to support the offer of dedication, and the ordinance fixes the date of the attempted acceptance of this alleged offer as May 21st, 1906.

But during the interval between the making of the alleged offer, and the attempted acceptance of the same, the entire foundation so relied upon to support the offer was destroyed and disappeared.

The plats of 1845 and 1853 were superseded by an official plat of the appellant company's property, prepared in the most careful and elaborate manner by the appellant's engineer and surveyor in 1872, and constantly used as the official and only plat of its property from that time to the present day.

That these facts and circumstances conclusively amount to a complete revocation on the part of the appellant of any assumed intention it might ever have had to dedicate the premises is too clear for argument, and that the revocation thus accomplished, long before the attempted acceptance, amounted to a withdrawal and cancellation of the assumed offer, and thereby put an end to the power of the city to accept, is well settled.

The principles governing the right to withdraw, before acceptance, the kind of an offer now under consideration,

namely, an offer *directly* and *immediately* to the public, have been frequently determined. *Baker* v. *Johnston*, 21 Mich. 319; *Baltimore City* v. *Broumel*, 86 Md. 157; 2 *Tiffany on Real Prop.*, 423.

There is no evidence of dedication to the public, through covenant, express or implied, with individuals, purchasers of appellant's lots or otherwise.

The mere sale and conveyance of a lot by reference to a plat does not amount to a covenant that all of the land of the vendor, shown on the plat, shall be appropriated to the uses designated in the plat.

None of the deeds contain any call for or reference to the existence of a park, or square. Furthermore, both of the plats in evidence show that the alleged park is bounded on all four sides by open streets, so that none of the lots described in any of the deeds in evidence are immediately adjacent to the premises, but the nearest of any of the lots shown to have been sold bind upon the intervening streets on the opposite sides thereof from the premises in question.

The principles governing the implied dedication of *streets* are well settled in this State. To raise such an implied dedication the lot conveyed *must be contiguous to* the street, and in order to be *contiguous* it is uniformly held that the lot must *bind upon* the street. *McCormick's case*, 45 Md. 524; *Tinges case*, 51 Md. 609; *Frick's case*, 82 Md. 85.

If, the doctrine of presumptive dedication, relating to streets, has any application to parks, squares, or other public places, it is manifest that a dedication of a park will not be presumed in favor of the purchasers of a lot merely because the lot is sold by reference to a plat upon which a space is delineated as a park. And if a different doctrine prevails as to parks, upon what principle does it proceed? In *Baker* v. *Johnston*, 21 Mich. 319, it was held that sales with reference to plat showing a public square, did not confer any rights, or easements, upon the purchaser, in the property delineated as a square.

In Massachusetts also, the question has been directly presented whether there is an implied covenant that the grantee

shall have the use of a square not contiguous to land bought by him, but separated by a public street. In *Coolidge* v. *Dexter*, 129 Mass. 167, it was held that "A mere reference to a plan, in the descriptive part of a deed of a lot of land, does not import a stipulation by the grantor that the plan shall not, in any respect, be subsequently changed in parts not adjacent to the land sold." See *Light* v. *Goddard*, 11 Allen, 5 ; *Badeau* v. *Mead*, 14 Barb. 332 ; *Johnson* v. *Shelter Island*, 47 Hun. 374 ; *Boston Water Co.* v. *Boston*, 127 Mass. 374 ; *Howard* v. *Rogers*, 4 Harris and Johnson, 278.

The majority of the cases where the dedication of a park or square has been upheld, have been cases where the dedication was direct to the public, and was acted on by the public, either by formal acceptance or by acts of user, which estopped the grantor from revoking the deed. In such cases, where mention is made of private rights in the owners of land sold by reference to plats showing the park or square, these private rights grow out of the dedication direct to the public, just as abutting owners have special rights in a street which must be respected by a municipality. *Van Witsen* v. *Gutman*, 79 Md. 405.

Other cases relating to parks have been decided in jurisdictions where dedication is not limited to contiguous land extending to the next highway, as in Maryland. These cases can, of course, have no force in this State. Except in these States where the broad view of presumptive dedication prevails, no case has been found in which the delineation upon a map of a park, and a sale of lots with reference to the map, without anything further, has been held to constitute a dedication of the park; and in view of the rigid rule limiting the extent of easements, in force in this State, it is submitted that to presume a dedication in this case would require a complete and radical reversal of well-settled principles of construction.

If it be assumed, however, for the sake of the argument, that a dedication of the premises will be implied in favor of the purchasers of the appellant's lots, nevertheless any such dedication was defeated and determined long before the attempted acceptance by the city.

Whether the alleged easement in favor of the appellant company's grantees still existed, or had ceased to exist, in 1906, when the city undertook to accept the same, is a most material question in this case.

If the easement was in fact extinguished, as between the appellant and its grantees, prior to the attempted acceptance by the city in 1906, then the power of the city to accept was gone, and the acceptance itself was wholly without force or effect, because it then had nothing upon which to operate.

It is well settled that, as between grantor and grantee, an easement arising out of an implied covenant will be extinguished and lost, whenever the covenant upon which it rests is cancelled or annulled. "If a dedication is presumed from any other covenant between grantor and grantee, or lessor and lessee, the dedication will likewise be defeated, whenever the covenant is cancelled before other rights supervene." *Story* v. *Ulman*, 88 Md. 247.

Do the facts disclosed by the record amount to an extinguishment of the alleged easement existing in favor of the appellant company's grantees in any manner recognized by law.

It is settled that the owner of an easement may release the same and thereby extinguish it, or he may *abandon* the easement. *Jones on Easements.* sec. 867; *Brown* v. *M. E. Church*, 37 Md. 108; *Vogler* v. *Geiss*, 51 Md. 407–10; *Glenn* v. *Davis*, 35 Md. 208; *Reg.* v. *Chorley*, 12 Q. B. 575; *Moore* v. *Rawson*, 3 B. & Cr. 339. In either case the question is one of intention, and the facts and circumstances from which such an intention will be presumed are clearly defined in the cases cited above. A cesser of the use of the easement for a long space of time is a strong fact to show the intention to abandon the right. *Reg.* v. *Chorley*, 12 Q. B. 575. And a cesser of use, without any reference to time, when coupled with any act indicative of an intention to abandon, amounts to proof of abandonment. *Vogler* v. *Geiss*, 51 Md. 407–410.

It is undisputed in this case that there has never been a user, or an attempted user of the alleged easement by any per-

son whatever.  And if, then, a cesser of use "is a strong fact" to show an abandonment, it is submitted that a total non-user, continued  without  interruption ·for  nearly  sixty years, is  virtually conclusive of an abandonment.  Standing alone, and without further evidence of intention, it is submitted that this material fact was sufficient, under the authorities, to amply make out an abandonment of the premises, and, at the least, the question should have been submitted to the jury; but the Court rejected the appellant's fifth; sixth and seventh prayers, which  sought to  submit  the  evidence of abandonment to the Court and jury, and granted all the prayers of the appellee which  utterly ignored  the  evidence, and denied any effect to the question, and in this it is submitted there was manifest error.  ·

But in addition to the evidence of non-use, the record discloses other facts (all of them undisputed) which either alone, or  coupled  with  the  non-use, afford  overwhelming  proof of abandonment.  On the part of the owners of the alleged easement is shown a total and continuous failure to ever use, or attempt to use, the easement of the alleged creation of the easement to the present time, a period of more than fifty years.

On the part of the owner of the premises is shown a continuous adversary occupation and possession of the premises, under a claim of right for more than fifty years, during the whole of which period the premises have been enclosed and the public rigorously excluded.

·  The tenants of the appellant have lived on the premises, buildings of the appellant have been erected and maintained on the premises and the premises themselves have been continuously cultivated and farmed, and valuable crops of hay and grass harvested annually therefrom.

·  The exclusive rights and ownership of the appellant have been recognized and respected by the public authorities and by the individual members of the public alike.   The city and State have regularly levied and collected taxes on the property certainly from a period prior to 1876 down to and including the present time.   The city police have arrested members of the public for trespassing upon the premise.s

The material and essential difference between the cases relied on by the appellee and this case is that in the one instance the covenant between the grantor and the grantee, out of which the offer to the public arose, had continued to exist in full force and effect from the time of its creation to the time of its acceptance by the city, while in the other instance the original covenant had been destroyed and extinguished prior to the attempted acceptance by the city.

All that the rule in Frick's case means, or was intended to mean, was that so long as the easement continued to exist in favor of the original covenantees, the offer to the city springing from such easement continued to exist, and that it was not essential for the city to accept such offer within any limited time, but that an acceptance at any time *during the existence of the covenant* was valid and effective.

But if, in the Frick case, the covenant upon which the offer to the city depended had been extinguished, prior to its acceptance by the city, then the power of the city to accept would have been destroyed without regard to the lapse of time. That this is the true meaning of the rule in Frick's case is clearly seen in later decisions fully explaining the same. In *Flersheim's case*, 85 Md. 94, the rule laid down in Frick's case was applied only because the evidence offered for the purpose was held insufficient to show that the easement created in favor of the original purchaser of the lot had ever been barred or extinguished prior to its acceptance by the city.

Can a plaintiff recover in an action of ejectment without showing that he has the *legal title* to the land in question?

It is submitted that the appellant in this case having neither title to nor possession of the *locus in quo*, and claiming only an easment, cannot recover in an action of ejectment under the decisions of this State. 1 *Poe, Pl. & Pr.*, 279, 280, and cases cited, section 259. What the plaintiff must show to recover: "In order to recover the plaintiff must have the *legal title* to the land, and, moreover, a possessory right, not barred by the Statute of Limitations." And cardinal rules in ejectment, secs. 260, 261—second rule, plaintiff must have legal title

The recent case of *Nicolai* v. *Balto. City*, 100 Md. 579, expressly holds that ejectment will not lie for an incorporeal hereditament.

*Joseph S. Goldsmith* and *Albert C. Ritchie*, Assistant City Solictors (with whom was W. *Cabell Bruce*, City Solicitor on the brief) for the appellee.

Before passage of the ordinance the public had become entitled to the use of the lot of ground as a public park, because a beneficial dedication is presumed to be accepted without any act on the part of the municipality. *Elliott on Roads and Streets*, sec. 152; *Tiffany on Real Property*, sec. 423; *Cyc. of Law and Procedure*, vol. 13, page 476. "The doctrine of dedication to public use has also been extended to apply to public squares in cities and villages, these being regarded as easements for the benefit of the public; and the fact of dedication may be established in the same manner as in the case of highways and streets," 2 *Dillon on Municipal Corporations*, sec. 644. "The full applicability of the doctrine of dedication to parks and public squares and commons is now generally recognized." *Cyc. of Law and Procedure*, vol. 13, page 448. "The doctrine of dedication extends and is applied to public squares, commons and parks as much as to highways, and the fact of dedication is established in the same way." 9 *Am. & Eng. Ency. of Law*, p. 25. "Public squares and parks may be established in the same manner as streets." *Current Law (Title Dedication)*, vol. 3, page 1050, N. 58.

The evidence in this case is ample to show a dedication of this square to the public use. *Trustees* v. *Hoboken*, 4 Vroom, 13; *Railway Co.* v. *Worley*, 49 Fla. 297; *Cincinnatti* v. *White*, 6 Pet. 430; *Attorney-General* v. *Abbott*, 154 Mass. 323; *Maywood Co.* v. *Village of Maywood*, 118 Ill. 61; *Abbott* v. *Mills*, 3 Vermont, 526; *San Leandro* v. *Le Breton*, 72 Cal. 174.

The legal principles relating to dedication of land for public parks which have been adopted by the above-mentioned authorities have also been approved by this Court in the recent case of *South Baltimore Harbor and Improvement Company* v.

v. *Smith*, 85 Md. 537, though the facts disclosed in that case did not authorize the Court to find that the land which was the subject of the controversy had been dedicated to public use.

Commencing with the year 1845, the appellant made conveyances of numerous lots of ground which were shown on the plat published in the last-mentioned year, and known as "Sales Plat No. 1," locating all such lots by reference to the aforesaid plat. Few, if any, of the streets shown on the aforesaid plat as extending through the property of the appellant were public streets. The later conveyances of the appellant do not refer in express terms to the plat of said appellant, but the appellee contends that all conveyances of the appellant, to the present day, must be taken as having been made with reference to said plat:

1.   Because the custom of making conveyances with reference to such plat having been proved, it should be presumed to continue to the present day, as no departure from it has been shown.

2.   Because the lots of ground conveyed cannot be located except by reference to such plat. It has been shown by uncontradicted evidence that no street in the neighborhood of the lot of ground in controversey is public, except Harrison street. Yet lots of ground in that section have been conveyed, described as binding on streets. The descriptions in the conveyances cannot refer to Poppleton's Plat, because, in the plan adopted by the appellant, the streets are not laid out as on Poppleton's Plat. Some are wider than on said plat. It must, therefore, have been the intention to describe said property as binding on the private streets shown on the plat of the appellant.

But even disregarding the frequent renewals of the dedication, the possession of the appellant cannot affect the rights of the appellee in this case. It has been held frequently by this Court, and is generally accepted elsewhere as settled law, that a dedication need not be accepted within any limited time, but may be accepted at any time while the relation of grantor and

grantee exists. "If *while such relation exists between grantor and the grantee*, or those claiming under him, the public authorites take steps to open the street, the grantor is only entitled to nominal ·damages because his covenant that it can be used as a street is still in force." *Clendenin* v. *The Maryland Construction Co.*, 86 Md. 83. See also *Mayor and City Council of Baltimore* v. *Frick*, 82 Md. 77 ; *Flersheim* v. *Baltimore City*, 85 Md. 489.

In *Richardson* v. *Davis*, 91 Md. 390, it was shown that the ground in controversy had not been used by the public, but had always been enclosed by the owner and cultivated or beautified, and that such enclosure had continued more. than thirty years after the dedication. This Court held that the dedication was not barred, saying : "It is settled that mere non-user and lapse of time do not constitute an abandonment of a dedicated street.

, In *Baltimore* v. *Broumel*, 86 Md. 153, and *Broumel* v. *White*, 87 Md. 521, it was held that a dedication was still valid after twenty years, although the owner had in the meantime constructed a house in the bed of the street. "It is supposed that the existence of the street, either present or prospective, entered into the consideration of the purchase, and thus the grantor of the lot or lots sold has been compensated for the public use of the street, and is, therefore, estopped to make further claim for such use as against the public." *McCormick* v. *The Mayor and City Council of Baltimore*, 45 Md. 525. See also. *White* v. *Flannigan*, 1 Md. 540.

It cannot be doubted that the purpose in representing to purchasers of property from the Canton Company the fact that the lot of ground in controversy would be made a public park, was to enhance the value of the lots sold, especially those in neighbood of the proposed park, and the Canton Company has unquestionably secured the benefit of its promise. Nothing could be more convincing of the effect of this proposed dedication than the fact, that promptly after the publication of the plat of 1845, practically all of the property along the south side of the proposed square was sold.

"As against the proprietor, a dedication of land for streets and highways *may be complete without any act or acceptance* on the part of the public ; but in order to charge the municipality or local district with the duty to repair, or to make it liable for injuries for suffering the street or highway to be or remain defective, there must be an *acceptance* of the dedication, and this acceptance must be by the *proper or authorized* local public authorities." 2 *Dillon on Mun. Corps*, sec. 642. "When the general public has not accepted the dedicator may revoke only if no individual rights have accrued, or if the holders of such rights consent." *Cyc. of Law and Procedure*, vol. 13, 490, note 99.

"The failure of the public to accept a dedication does not affect the rights of purchasers of the lots with reference to the proposed highway or park, to assert rights of user therein, for the benefit of their property, since the vendor is estopped to deny the existence of such rights in their favor." *Tiffany on Real Property*, sec. 423.

An examination of the authorities referred to above makes the conclusion inevitable that when a grant has been made which has effected a dedication, the dedication can be annulled only by agreement between the grantor and grantee or by merger of the interests of the grantor and grantee in one person.

No proof has been offered in this case of any fact that could create a doubt as to the intention of the Canton Company to dedicate the land in controversy to public use prior to 1856 or 1857, when a fence was erected around the lot, and we do not admit that enclosing the lot should have caused such doubt. In 1856, eleven years had elapsed since publication of the plat of 1845, and in that period of time nearly all the ground opposite to and along the south side of the lot in controversy had been sold, the conveyances referring in express terms to said plat. Those conveyances remain outstanding, and it is submitted that, disregarding for the moment the rights of purchasers of other lots, the holders of those lots at least are entitled to the use of the property in controversy as

a public square, and the public is entitled to claim through them.

From the year 1856 or 1857 (when the ground in controversy was enclosed) to the present day, the nature of the use of this property by the appellant and of its acts of ownership, have been uniformly of about the same character. Yet, in the year 1873, sixteen years after such use and acts began, the company deliberately executed and recorded a formal deed of trust in which it declared that this property had been *laid out by it as a public park and dedicated to the public use as such.* The appellee contends that by this declaration the company indicated conclusively that its use of the property and acts of ownership were not intended to revoke or affect the dedication previously made.

The public never intended to abandon the dedicated ground. This is manifest from the testimony of the witnesses of the appellant to the effect that the company employed men to keep the public off the ground by force. The reason for delay in acceptance of the dedication by the city is manifest. The city has not been built up extensively in the neighborhood of that ground until recently. Even now there are no improvements for some distance north and west of the property. The city would not have been justified in accepting the dedication prior to the time of passage of the ordinance recently for that purpose, because the cost of maintenance of the park would have been wasted.

Though it is generally held that the action of ejectment cannot be maintained to recover a private easement, the same authorites hold that a municipal corporation may maintain this action to recover possession of property dedicated to public use. *Newell on Ejectment*, sec. 6 ; 10 *A. & E. Ency*, 475 ; 2 *Dillon on Mun. Corp.*, sec. 662 ; *Smith on Mun. Corp.*, sec. 607 ; *Elliott on Roads and Streets*, sec. 443 ; *Hoboken Land Co.* v. *City of Hoboken*, 36 N. J. L. 540.

SCHMUCKER, J., delivered the opinion of the Court.

The appeal in this case is from a judgment in ejectment ren-

dered by the Superior Court of Baltimore City in favor of that city against the Canton Company.    The land described in the declaration is a lot or square of ground in Baltimore City forming a part of what is known as the Canton Co's. land and bounded by Canton avenue, Lancaster, Patuxent and Canton streets.    The judgment is not for the property described in the declaration but is "for an easement in the property described in the declaration with exclusive right to the possession of the same for use as a public park."    The city does not claim title to the square under any conveyance.    It sues for the protection of an alleged incorporeal right or easement of the public to use the square as a park, upon the theory that there had been a dedication of it by the Canton Company to public use for that purpose.

Two bills of exception appear in the record, one to rulings on the admissibilily of evidence and the other to the Court's action on the prayers.    The two cardinal questions presented by the appeal are, first, whether there was an unrevoked dedication of or offer to dedicate the square to public use as a park at the time the city undertook to accept it, and, secondly, whether the present action of ejectment, will lie at the suit of the city to secure to 'the public the enjoyment of the square as a park.

We have come to the conclusion that the case must be reversed upon both of these propositions, and, as important public interests are involved in the issue and the question of dedication was fully and ably discussed upon the briefs and in the argument before us, we will express our views upon both propositions in the order in which we have stated them.

The dedication of land to any public use is essentially a matter of intention.    Certain dealings with property by its owner have been held to afford conclusive evidence of his purpose to make the dedication but it is essential to establish the intention in every case.    The principle of dedication rests largely upon the doctrine of estoppel *in pais* and, while there are general rules applicable to certain lines of conduct on the part of the owner of the land, each individual case must after

.all be decided upon its own facts and circumstances. *Balti-more* v. *Frick*, 82 Md. 83. All of the facts in each case tend-ing to show the intentions of the owner must receive due con-sideration, for as was said in *McCormick* v. *Baltimore*, 45 Md. 524, "The evidence of such intention is furnished in various ways but, as dedication will be presumed where the facts and circumstances of the case clearly warrant it, so that presump-tion may be rebutted and altogether prevented from arising by circumstances incompatible with the supposition that any dedi-cation was intended."

It is now universally held that an intention to dedicate land lying in the beds of streets to public use will be presumed where its owner makes a plat of the land on which the streets are laid down and then conveys it in lots described as bound-ing on the streets or by reference to their numbers on the plat from which it appears that they do in fact bound on the street. In such cases there is, in the absence of language showing that no dedication was intended, an implied covenant that the purchaser shall have the use of the streets on which his lots bound, from which a dedication of the streets to public use is held to arise. *White* v. *Flannigan*, 1 Md. 540; *Moale* v. *Balti-more*, 5 Md. 321; *Hawley's case*, 33 Md. 280; *McCormick's case*; 45 Md. 523; *Tinges case*, 51 Md. 600; *Pitts case*, 73 Md; 326; *Baltimore* v. *Frick*, 82 Md. 83. But the dedication of such streets to public use resulting from their conveyance in the manner mentioned does not become final and irrevocable until there has been an acceptance of it on the part of the public authorities. *Baltimore* v. *Broumel*, 86 Md. 153; *Valentine* v. *Hagerstown*, 86 Md. 486; *New Windsor* v. *Stocksdale*, 95 Md. 212. In the last mentioned case we said that the acceptance of a dedication "may be evidenced in one of three ways viz; by deed or other record, by acts *in pais* such as opening, grading or keeping the road in repair, or by long continued user on the part of the public."

While the authorities are agreed that streets or highways may be thus dedicated by their owners to public use they do not agree as to the physical limits of the dedication. Some

authorities hold that the streets mentioned in the deed or laid out on the plat are embraced in the dedication to the full extent that they are owned by the grantor. Other cases, among which are the decisions of this Court, confine the dedication to a limited and restricted area. In *Hawley* v. *Baltimore*, 33 Md. 270, which may be regarded as the leading case upon that subject it is said: "The law is now too well settled to admit of any doubt that if the owner of a piece of land lays it out in lots and streets and sells lots calling to bind on such streets he thereby dedicates the streets so laid out to public use. The rule is founded on the doctrine of implied covenants and the dedication will be held to be co-extensive with the right of way acquired as an easement by the purchaser. It is upon the implied covenant in the grant to him that the dedication to public use rests and such dedication must necessarily be measured by the limits of the right he has acquired by virtue of his grant. In the case before us the right of way or easement in Mosher street acquired by the purchasers of the lots mentioned in the proof is the precise limit of the dedication by Hiss. Over what portion of Mosher street then did their right of way exist? We think they acquired by their several purchases the right of way only from Madison avenue to McCulloh street, as it is between those streets that their lots lie and bind on Mosher. The doctrine of implied covenants will not be held to create a right of way over all of the lands of a vendor which may lie, however remote, in the bed of a street. The lands must be contiguous to the lot sold and there must be some point of limitation. The true doctrine is, as we understand it, that the purchaser of a lot calling to bind on a street not yet opened by the public authorities is entitled to a right of way over it, if it is of the lands of his vendor, to its full extent and dimensions only until it reaches some other street or public way. To this extent will the vendor be held by the implied covenant of his deed and no further." In Hawley's case the owner of the lot sold exhibited to the purchaser at the time of the sale a plat of his land on which the streets were laid down, but the plat was not called for in the deed of the lot to the purchaser.

In *Baltimore* v. *Frick*, 82 Md. 85, we cited and followed Hawley's case as to the extent of the dedication of a street by the grant of a lot bounding thereon and still more accurately defined the limits of the dedication by saying: "The contention that the street which limits the extent of the dedication must be an open public street, is not supported by the cases heretofore decided by this Court. In *Hawley's case, supra,* the land over which the right of way is given it is said must not be remote but contiguous to the lot sold, but if the contention of the city, that in all cases we must presume a dedication of a right of way over the grantor's land until the next or nearest *open* street is reached be correct, such right of way would in many cases extend over land not only not contiguous to but very remote from the lot sold." It may therefore be said that under the decisions of this Court the sale of a lot of land calling to bind on an unopened street works a dedication to public use of that street, if it is of the land of the grantor, only until it reaches the next open or unopened street.

Although the law relating to the dedication to public use of *streets* has been settled by numerous decisions of this Court we have seldom been called upon to consider the nature and extent of the dedication of a *park* to such use when it is so designated on a plat of the grantor's land and reference is made to the plat in deeds conveying portions of the land.

Most of the text books and many cases assert broadly that the rules and principles controlling the dedication of streets to public use by the use of or reference to plats in the manner mentioned by us apply with equal force to the dedication of parks and other public places designated on such plats. 2 *Dillon on Mun. Corp.*, sec. 644; 13 *Cyc.*, 448; 9 *Am. & Eng. Ency. of Law*, p. 25. Other cases plainly distinguish between the principles applicable to the dedication of "streets affording easements directly profitable and necessary to the use of lots" and parks which are intended for public recreation and enjoyment and are only indirectly beneficial to the lots. *Baker* v. *Johnson*, 21 Mich. 319; *Coolidge* v. *Dexter*, 129 Mass. 167; *Light* v. *Goddard*, 11 Allen, 5, where it is said by BIGELOW,

C. J.: "An attempt is made in the present case to extend this rule of interpretation much further than is warranted by any of the adjudicated cases.   The plaintiff claims under a deed which describes the lots conveyed as laid down on a plan to which reference is made.   Upon inspection of this plan, it appears that these lots are carved out of a large tract of land, the whole of which is divided into numerous lots or parcels, and is fully laid down on said plan.   It also appears that certain other land, which at the time of the grant in question also belonged to the grantors, and which is not immediately adjacent to the lots conveyed, but *is separated therefrom by a contemplated street which forms one of the boundary lines of the lots conveyed*, is designated on the plan as 'Ornamental Grounds' and as 'Play Grounds.'   The contention of the plaintiff is that such designation on the plan referred to in the deed of lands lying in the vicinity of, but not adjacent thereto, the land granted amounts to a covenant that those grounds shall forever continue to be appropriated and used for the uses and purposes so designated."

"We are by no means prepared to adopt as a sound rule of exposition the general proposition on which the argument for the plaintiff rests.   We do not think that a mere reference to a plan in the descriptive part of a deed carries with it by necessary implication an agreement or stipulation that the condition of land, not adjacent to, but lying in the vicinity of, that granted, as shown on the plan, or the use to which it is represented on the plan to be appropriated, shall forever continue the same so far as it may be indirectly beneficial to the land included in the deed, and was within the power or control of the grantor at the time of the grant."

We will now consider the facts of the case before us in the light of principles to which we have referred.   The Canton Company is a well-known owner of a large tract of land in the eastern section of Baltimore, which it acquired many years ago and from which it has from time to time sold lots. These lots were described in the deeds conveying them as bounding upon various streets and in many of the deeds made

between the years 1846 and 1882 the lots conveyed were further described as being "numbers —, —, —, on the Canton Company's plat." A number of the lots thus conveyed were situated upon the streets facing the square in question, but in none of the deeds for any of the lots was any public park mentioned or referred to or was there even any allusion to this square. From the references in these deeds to the Canton Company's plat it is apparent that the company had a plat of its property, but there is no evidence in the case that the company every recorded its plat or in any form made an issue or publication of it to the community at large or made any representations in reference to it other than those contained in the deeds, appearing in the record. Portions of several different plats were offered in evidence by the city and were admitted over the objection of the Canton Company and the Court's action in that respect forms the subject of bills of exception.

These plats agree in the location upon them of the respective streets. Two of them, which are alleged to be copies of Canton Company plats of about the years 1845 and 1853 respectively, and one, which is alleged to be a copy of part of Poppleton's plat of Baltimore as enlarged in 1851 so as to include Canton, also show the alleged park designated as a public square. We here insert for purposes of illustration a copy of a sufficient portion of the plat of 1845 to show the location thereon of the alleged park and the blocks of ground immediately surrounding it.

J. Howard Sutton, a surveyor and civil engineer, testified for the defendant that he had been connected as employee and partner with the firm of Simon J. Martenet & Co. since the year 1878, that Simon J. Martenet had been the surveyor of the Canton Co. from prior to 1870 down to his death in 1893, and that the firm had continued to be its surveyors since that time, that about 1870 to 1872 Mr. Martenet had prepared for the company an elaborate atlas of all of its property upon which were located all conveyances theretofore made by the company and all of the property still owned by it at that time; and that it had been the continuous custom of the company ever since then to enter upon the atlas at intervals of about three months all deeds, leases or changes that might have occurred in that interval and also to add to the map any purchases of additional land made by the company, and that the atlas had always been kept at the company's office and used by it in connection with all transfers, sales, leases or other transactions appertaining to its real estate. The atlas was put in evidence and identified by the witness. Upon the section of the atlas

covering the portion of the company's land embracing the square in question the location of the streets and the square is the same as upon the plat of which a copy appears in this opinion but the square is entirely blank, like the other vacant lots appearing on the map, and has no suggestion upon it either in letters or decoration indicating that it is or was in-tended to be a public park. Furthermore it is marked on two of its sides with red lines which are uniformly used on the atlas to designate the portions of the entire property still owned in fee simple by the company.

In addition to the deeds mentioned, the Canton Company in December, 1873, executed a mortgage of its entire property to George S. Brown and others, to secure an issue of bonds made by it, excepting therefrom in addition to the streets laid down on the plat of its property a public park in the following language: "Saving and excepting from this conveyance that portion of the said property of said company which has here-tofore been by it laid out as a public park and dedicated to public use as such and which park is likewise marked and located on the said plat of said company's property." It ap-pears from the record that this mortgage was released on April 23rd, 1887.

There is no evidence in the case that the alleged park ever was used as such by the public or by any person, except that on several occasions church or school picnics were held in it for which in each instance special permission was procured from the company. On the contrary the uncontradicted evi-dence shows that since 1856 the square has been fenced in and used or rented out by the company and the public have been strictly excluded from it. It has been assessed to the Canton Company for city and State taxes ever since 1876, the present assessment being $34,604, and the city has regu-larly demanded and the Canton Co. has paid the taxes on the assessment.

On April 11th, 1906, an ordinance was introduced in the City Council of Baltimore accepting on the part of the city, the dedi-cation of the alleged park but, before the ordinance was passed,

the Canton Company executed and put on record a sealed instrument declaring that it had never dedicated or offered to dedicate the park to public use and asserting if there ever had been any dedication it had been revoked, annulled and withdrawn by the published maps of the company and further declaring by the instrument itself a revocation, annullment and withdrawal of any dedication or offer to dedicate the park which may have been theretofore made by the company.

The state of facts thus shown by the record does not in our opinion furnish legally sufficient evidence of a dedication by the Canton Company of the square to public use as a park. The deeds offered in evidence do not any of them on their face profess to convey to the grantees any title to, interest in or use of the square, nor is it described or referred to or mentioned in any of them, nor do any of the lots conveyed by the deeds touch or bound on the square itself. A deed of a lot described as bounding on a street will dedicate the street, if of the lands of the grantor, to the next cross street but it will not, in the absence of apt expressions for that purpose, give to the grantee any interest in land lying on the opposite side of the street.

In *Howard* v. *Rogers*, 4 H. & J. 278, John Eager Howard conveyed to Rogers a lot of ground, part of Lunn's Lot, bounding on the south side of German street and in describing the lot used this language "which street bounds on the south the square intended for public uses, and thence east binding on said street and fronting the square to the place of beginning." On a bill filed in Chancery by Rogers to restrain Howard from applying the square to private uses it was held that the deed conveyed to the grantee "no right, interest or privilege in the square." "There is not anything mentioned in the granting part of the deed but a lot of ground on the said Lunn's lot. These words 'Beginning,' etc., are a description of the lot, and designate the location of it, and show in a plain manner where it lies. The words 'which street bounds on the south the square intended for public uses,' were inserted to render the description more certain, and identify more plainly

the said lot; these words convey no right, interest or privilege
in the square.   The words 'binding on the said street, and
fronting the said square to the beginning,' are also words of
description, and are susceptible of the same answer."   *   *   *
"It was the plain intention of the parties, to be collected from
the words of the deed, that the lot therein described should
pass, and all Col. Howards right and interest therein, and
nothing else."

The only manner therefore in which any interest or privilege
in the square can be claimed by the grantees under the deeds
appearing in the present record is upon the theory of an im-
plied covenant, for its use as a park, arising from the references
contained in them to the plat.   Before the Canton Company
could be deprived of the beneficial use of the valuable property
in controversy upon any such theory, the fact would have to
be established by the clearest and most convincing evidence
that the plat referred to in the deeds had that square desig-
nated upon it as a public park.   The city attempted to prove
that fact by the production and putting in evidence of copies
of portions of the three different plats upon which the square
was so designated, but it failed to produce any direct testimony
tracing these plats to the possession of the Canton Company
or identifying any of them as the one referred to in the deeds.
In *Harbor Co.* v. *Smith,* 85 Md. 542, where this Court refused
to uphold an alleged dedication of a square of ground to pub-
lic use as a park, we said: "The rule that the strongest, clear-
est and most convincing proof of intention will be required to
establish a dedication has been announced again and again by
this Court."   The originals of the three plats were not pro-
duced, the defendant agreeing that the copies might be used
subject to the objection to the admissibility of the originals.
The copies offered in evidence had the following memoranda
endorsed on them.   On the first was the memorandum made
in 1904 by Martenet & Co.  '"Copy of a part of plan of a part
of Canton Company's ground endorsed 'copy of printed map
in possession of Title Guaranty & Trust Company.   The orig-
inal is not dated but we believe same to have been published

about 1845." The next copy has endorsed upon it "Copy of part of the plan of the Harbor of Baltimore in connection with the Canton Company's land compiled by William Dawson, Jr., 1853." The memorandum appearing on the third copy saying that it was from Poppleton's enlarged plat of Baltimore has already been substantially stated.

The fact that the description of the lots conveyed by the deeds answers to the location and dimensions of the lots of corresponding numbers on the plat of 1845 might have been admissible, if followed up by other evidence of identity, as tending to show that it was the plat referred to in the deeds, but no such other evidence appears in the record. It is further to be observed that although the memorandum on that plat said that it was a copy of a copy in the possession of the Title Co. none of the officers or employees of that company were put upon the stand to show the source from which it came.

Even if the record had contained such evidence as the law requires to show a tender by the Canton Company of a dedication of the square to the public for a park the uninterrupted, open and adverse possession by enclosures of the square by that company from 1856 down to the institution of this suit would have formed an effectual bar to its maintenance. Even if we assume that the company, by the execution of deeds referring to a plat of its lands on which the square was designated as a public park, made an implied covenant with the purchasers to allow its use as a park from which an intent to make a dedication to public use was to be inferred, it remained in possession of the land as vendor. Under these circumstances by repudiating the right of the public to use the square as a park and excluding them from it by fencing it in and openly asserting the ownership of and title to the land and paying the taxes thereon, as the evidence shows the company did in this case, its possession became adverse and at the expiration of twenty years ripened into a good prescriptive title. I *Cyc.* 1040, *Waltemeyer* v. *Baughman,* 63 Md. 200. Nor was the defense of adverse possession defeated by the execurion of the ·mortgage to George S. Brown and

others in 1873, first because the adverse possession continued for more than thirty years after that date, and secondly, because the covenants express and implied of that instrument ceased to be operative after its release and there was prior to that time no acceptance on the part of the public of any dedication, which could have been inferred from the statements contained in the mortgage.

As, for the several reasons mentioned, the record shows a good defense to the suit we deem it unnecessary to pass upon the effect of the instrument in the nature of a disclaimer and revocation placed upon record in 1906 by the Canton Company.

Turning now to the second issue presented by the appeal, the present action is not maintainable because an ejectment will not lie in this State for an incorporeal right or easement in land such as that claimed in the present case. The counsel for the appellee have cited upon their brief some decisions and text writers holding that where lands have been dedicated to public use the municipality may maintain an ejectment therefor, but this Court has uniformly held that the action will not lie, at the suit of one who has no legal title to the land, to recover a right of way or other easement. 1 *Poe Pleading and Practice*, sec. 261 and cases there cited. The law upon this proposition has been fully stated by us in the recent case of *Nicolai* v. *Baltimore*, 100 Md. 579, and no good purpose would be served by repeating here what we have there said.

The Court below should in our opinion have taken the case from himself as a jury by granting the defendants first, second and third prayers and for his failure to do so the judgment must be reversed. Inasmuch as we have held that the present action cannot lie we will not remand the case. For the same reason we abstain from passing in detail upon the other thirteen prayers nine of which were offered by the plaintiff and four by the defendant.

*Judgment reversed with costs without a new trial.*

A motion for a re-argument was subsequently made and in disposing of the same on June 26th, 1907,

SCHUMUCKER, J., delivered the opinion of the Court.

Since the handing down of the opinion in this case the appellee, Baltimore City, has made a motion for a reargument and has filed a carefully prepared brief in support of the motion. The reasons advanced by the brief for a reargument may be conveniently grouped under three heads which are

1st. That some important matters which transpired at the trial below, tending to prove a dedication of the square of ground in question to public use as a park by acts *in pais* or admissions were not shown by the record.

2nd. That we did not correctly apprehend or give due weight to the evidence which appeared in the record tending to prove the dedication by implied covenants arising from deeds made by the Canton Company to sundry purchasers of lots from it.

3rd. That we erred in the conclusions of law at which we arrived.

We held in our opinion already filed that, under the plain decisions of this Court from which we saw no reason to depart, the city was not entitled to maintain the present action of ejectment because it had no legal title to the land in controversy. Because of the importance of the case and the thoroughness with which it had been discussed we also expressed our views upon the legal sufficiency of the evidence to establish a dedication of the lot and the effect of the ripened adverse possession of the lot by the Canton Company long before any attempt at an acceptance of the alleged dedication had been made on the part of the public.

After a careful consideration of the brief on the motion we see no reason to change our views on the want of right in the city to maintain the suit, but in view of the labor and care bestowed by counsel upon the brief we will examine its leading propositions upon the other features of the case.

This appeal like all others must be determined by us upon

the contents of the record.    We are not at liberty to consider
the alleged testimony of Bernard N. Baker touching acts *in
pais* of the Canton Co. tending to prove a dedication, said by
the brief to have been introduced by the city at the trial below
and stricken out by the trial Judge on motion of the Canton
Company, because neither that evidence nor any statement of
its substance appears in the record, nor was there any applica-
tion for a writ of diminution to supply it.    The same observa-
tion applies to the other statements in the brief of what occurred
or was said at the trial below which is not shown by the
record.

In deciding only the case put before us by the record we
furnish a precedent for such cases only as are sufficiently sim-
ilar in facts to the one before us to justify a like application to
them of the principles upon which we base our conclusions.

Turning our attention to the suggestion in the city's brief on
the motion, that we were misled as to the true character and
effect of the plats offered in evidence by it as tending, when
taken together with certain deeds, to establish the alleged
dedication of the square to public use, we will briefly review
the contents of the record in that respect.    Sundry deeds ap-
pear in the record from the Canton Co. of portions of its land
which recite that the lots thereby conveyed are lots laid down
on the Canton Co.'s plat.    Copies of three plats were put in
evidence by the city subject to exception on which the lands
of the company are laid out in lots and the square in question
is shown as a public square.    The deeds themselves make no
mention of or reference to the square nor do they contain a
description of or identify the plat to which they refer, nor
does the record contain any direct testimony connecting the
plats or any of them with the deeds.

The record shows a notice from the city to the Canton Co.
to produce at the trial below the plat known as "sales plat
No. 1," of the company published about 1845, and said in
the notice to have been referred to in numerous conveyances
of the company after that date, and also the sales plat of the
company published in 1853 and said in the notice to have

been referred to in numerous conveyances of the company after that date. It does not appear by the record that any plats were produced by the Canton Co. in response to that notice. Following the notice there appears in the record an agreement of counsel that the *City might produce* and use on its behalf, subject to all exception and objection that might be interposed to the use of the original as evidence, a blue print of the plat known as Sales Plat No. 1, made about 1845 and also a copy of the plat of the Canton Company's property prepared in 1853 by William Dawson, Jr. This agreement contains no admission at all that either of these plats was the one referred to in the deeds, relied on for the alleged dedication, nor are those deeds mentioned or in any manner referred to in the agreement. The trial Judge asked the counsel whether it was admitted that the deeds referred to either of the two plats and the counsel for the Canton Co. replied "We do not admit that they do, and we do not think that they do" and, after further colloquy, reiterated their refusal to admit that either of the plats was the one referred to by the deeds although they admitted that they were Canton Company plats. The copies, mentioned in the agreement, of the two plats were introduced by the city, subject to the exception above stated, but no evidence was offered to show that the company had published either of the plats or recorded them in the public records or exhibited them to the purchasers of the lots or to other persons. When the copy of the plat of 1853 was put in evidence there appeared pasted upon its back what was designated as a "Plan of the City of Baltimore as enlarged and laid out by T. H. Poppleton under the direction of commissioners appointed by the General Assembly * * * corrected to November, 1851, a survey of its environs and Canton." On this plat the square appeared as it did upon the other two. The city admitted that this plat was a separate one from that on which it was pasted and that the two had not been issued together by the Canton Co. No further evidence appears touching this last mentioned plat. The Canton Co. subsequently moved to strike out the deeds and all of the plats from

the evidence but the Court refused to grant the motion.     This evidence does not in our opinion measure up to the standard set by us in *Harbor Co.* v. *Smith,* 85 Md. 542, of the character of evidence required to establish, as must be done beyond reasonable doubt, the intention of an owner of property to dedicate it to public use.     In that case we said "The rule that the strongest, clearest, and most convincing proof of intention will be required to establish a dedication has been announced again and again by this Court."

The brief on the motion suggests that although there was no direct testimony tracing any of these plats to the possession of the Canton Company such possession was sufficiently established by the contents of the letter of November 30th, 1906, from the plaintiff's to the defendants counsel enclosing the notice to produce the plats, taken together with the agreement of counsel for the use of copies of plats in lieu of the originals, and the admission of defendants counsel that they were Canton Company's plats.     Without reviewing in detail these several elements of proof we are of opinion after carefully examining them that even if it be admitted that they show the plats to have been at sometime in the possession of the company they do not show at what time nor do they prove that the plats or any of them were distributed or issued to the public by the company or in any manner employed by it in procuring or making the sales for which the deeds appear in the record nor do they sufficiently connect the plats with the deeds.

The views expressed in our opinion already filed, as to the true operation and effect of the reference to the square as laid down on a Canton Company plat contained in the mortgage from that company to George S. Brown and others in 1873 which was afterwards paid off and released, remain unchanged and need not be repeated.

The brief calls attention to the fact, of which we were aware when our opinion was written, that in *White* v. *Flannigan,* 1 Md. 525, the Court in commenting upon *Howard* v. *Rogers,* said in effect that it appeared from the record in that

case, although not from the printed report, that the dedication made by Col. Howard of the lot on German street was conditioned upon the removal of the State capital to Baltimore, and that if the condition had been complied with Howard could not have resisted a claim to have it so dedicated.  Giving full force to the construction thus placed upon *Howard* v. *Rogers* it would afford no ground for changing the views expressed by us of the insufficiency of the evidence in the present case to establish the dedication here claimed.  *Howard* v. *Rogers* differs from the present case in that there was not only proof of the making and publication by Howard of a plat of his land showing the existence and location of the park, but the deed itself from Howard to Rogers stated on its face that the square, lying opposite the lot conveyed, was "intended for public uses."  It further appears that in that case a deed for the lot, in which the expressions relative to the public square were omitted, had been executed by Howard and tendered to Rogers who refused to accept it and insisted that those words be inserted in the deed for the purpose of giving his lot the privilege of fronting on the square.  We have here no such proof of an intention to dedicate the square in question as was presented in that case.

Nor can we yield our assent to the very urgent contention made in the brief on the motion as to the effect of the adverse possession of the square by the Canton Company.  The uncontradicted evidence in the record shows that since 1856 there has been no use by the public of the square as a park, without the express permission of the Canton Company first obtained for that purpose, and that during all of that time the company has maintained an interrupted adverse possession by actual enclosure of the square, so open and notorious that it could not have escaped the notice of any one living or passing in sight of it, and so hostile and exclusive as to have completely prevented the exercise of a right or easement in any other person to enter upon and use the square as a park.  That state of affairs continued uninterruptedly for forty years before any attempt on the part of the public authorities was made

to accept the alleged dedication of the square as a park. Although it is conceded that mere non-user of an easement even for more than twenty years will not afford conclusive evidence of its abandonment, such non-user for a prescriptive period united with an adverse use of the servient estate inconsistent with the existence of the easement will extinguish it. *Washburn on Easements*, sec. 551–2; 14 *Cyc.*, 1195; 10 *A. & E. Ency. of Law*, 436; *Woodruff* v. *Paddock*, 130 N. Y. 618; *Matter of New York, etc.*, 73 New York App. Div. 394; *Smyles* v. *Hastings*, 22 N. Y. 224; *Smith* v. *Langewald*, 140 Mass. 205; *Spackman* v. *Steidel*, 88 Pa. St. 453; *Horner* v. *Stilwell*, 35 N. J. L. 307; *Bently* v. *Root*, 19 R. I. 205; *McKinney* v. *Lanney*, 139 Ind. 170; *Lathrop* v. *Elsner*, 93 Mich. 599; *Louisville* v. *Quinn*, 94 Ky. 310.

In *Clendenin* v. *Md. Construction Co.*, 86 Md. 85, we said, in reference to the dedication to public use of streets and highways resulting from the implied covenant arising from the call for such streets as boundaries in deeds of lots lying thereon, "So long as the implied covenant between the grantor and grantee exists, the city can accept, unless there has been an abandonment or an estoppel of some kind, but as the dedication to the public springs from and is supported by the title conveyed to the grantee, and must depend upon the existence of that covenant it must cease with it if there has been no acceptance during the time it was in the power of the city to accept." Again we said in *Story* v. *Ulman*, 88 Md. 247, "But when a dedication is presumed from an implied covenant in a deed which arises from a call for a street as a bouudary line this dedication will be defeated if the covenant is rescinded before the street is opened or used by the public." As we have frequently held that the right of the public in such cases is only co-extensive with the easement acquired by the purchaser and must be measured by its limits, it follows that if that easement has been extinguished by non-user coupled with adverse possession before there has been an acceptance by the public the dedication will be defeated. The principles, thus declared in reference to the dedication of streets to public

use from implied covenants in conveyances to purchasers of lots bounding thereon, apply with at least equal force to the dedication of a square to public use as a park from the reference to a plat on which it is shown, in a conveyance by its owner of other lots appearing on the same plat.

The application for a reargument of the case must be refused.

*Motion refused with costs.*