# WILLIAM J. CLENDENIN *vs.* THE MARYLAND CONSTUCTION COMPANY.

### *Dedication of Streets—Revocation Thereof.*

The dedication of a street to the public arising from the fact that the owner of land has made a map thereof, designating lots and streets, and has sold lots described as binding on such street, is complete so long as the relation of grantor and grantee exists, and the municipal authorities may accept such dedication and open the street without making compensation to the grantor.   But if before the street has been so accepted and opened one person becomes the owner of both the bed of such street and the adjoining lots, the dedication is revoked.

Appeal from a *pro forma* decree of the Circuit Court of Baltimore City.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE and BOYD, JJ.

*John Pentland Brown,* for the appellant.

The Court declined to hear *H. R. Preston* (with whom was *H. L. Bond, Jr.,* on the brief), for the appellee.

BOYD, J., delivered the opinion of the Court.

The appeal in this case is from a *pro forma* decree of the Circuit Court of Baltimore City requiring the appellant to pay the purchase money for some property now in the city, but formerly in Baltimore County, bought by him of the appellee, which is bounded on the north by Clifton Park, on the south by North avenue, on the east by a line drawn through the centre of Patterson Park avenue extended, and on the west by Choptank street (now called Collington avenue).  The contract of sale is admitted but the appellant objects to the title because he is advised that a portion of the land sold to him has been dedicated to the public use,

constituting the beds of certain streets spoken of in the proceedings as a forty-foot street, a twenty-foot street and a part of Madeira street.   In 1853 Robert Boyd made a deed of trust for the benefit of his creditors to James Malcolm and William Talbott, trustees.   They having been directed to make sale of the property filed a plat in the Superior Court of Baltimore City upon which are shown Choptank street extended north of North avenue, and the forty-foot street above referred to.   So much of the plat as relates to any of the lots and streets in question is filed in this case and marked " Exhibit Plat No. 2."   The trustees by deed dated May 31st, 1856, conveyed by courses and distances to James A. Reed a lot which embraces the seven lots in section No. 7 on said plat and in the description called for the street forty feet wide.   Reed conveyed it to George Rost by deed dated April 23rd, 1863, using the same description as that in the deed to him.   The trustees by deed dated November 2, 1855, conveyed to James Cairnes, by courses and distances, the land which embraced all the lots composing section No. 6 on that plat.   It was described as beginning at the northermost corner or intersection of Choptank street and the forty-foot street and bounds on the latter.   James Cairnes conveyed it to George Rost by two deeds made in 1860 and 1862, one of which called for the forty-foot street, as in the deed to Cairnes.

George Rost thus became the owner of all the property involved in this case, he having become possessed of a part of it east of Madeira street through other sources.   Several instruments were executed by him in which the forty-foot street was referred to.   He having died, a proceeding for the sale of the property was instituted in the Circuit Court of Baltimore City which resulted in a decree on July 28, 1880, appointing John T. Morris, trustee, to sell the property.   A plat was filed in that case upon which were shown the forty-foot street, Madeira street and the twenty-foot street, being practically the same as Exhibit Plat No. 1. Mr. Morris, as trustee, sold the five lots described in the

bill, which are also shown on Exhibit Plat No. 1, and called for these three streets. That purchaser sold them in 1888 by the same description and they were eventually conveyed to the appellee by a deed of October 23, 1890, and the beds of the three streets spoken of were also conveyed to it by Robert A. Dobbin, substituted trustee of the Boyd estate, and John T. Morris, trustee in the other proceeding spoken of, by deeds dated September 10, 1896, and January 29, 1897, respectively. It was conceded by the appellee that the proceedings and deeds of the trustees, Malcolm and Talbott of the Boyd estate, and Morris in the equity cause, worked a dedication of the three streets. In point of fact, this Court held in *Pitts' case*, 73 Md. 326, that a sale made by the same trustees of the Boyd estate, Messrs. Malcolm and Talbott, did work a dedication of Argyle alley, although it did not of some streets mentioned in that case by reason of certain expressions used which affected them. But it is contended that inasmuch as the streets were never in point of fact laid out or opened and the public authorities did not in any way signify their acceptance of them, there has been a revocation of the dedication by the appellee, who has become the owner of all the property, including the beds of the streets.

Although there have been numerous decisions in this Court on the subject of dedication which have settled certain general principles, the contention of the appellee presents a very important question, and one that in the opinion of the learned solicitor for the appellant has not been decided by this Court. No dedication exists unless the intent of the owner to dedicate his land to the particular use claimed is clearly proven by the facts and circumstances. When those facts and circumstances warrant it, the intent to dedicate is presumed. One of the most common modes by which dedication is evidenced is that which was presented in the early case of *White* v. *Flannigan*, 1 Md. 525, where it was held that if a party sells property lying within the limits of a city and in a conveyance bounds such property

by streets designated as such in the conveyance, or on a map made by the city, or by the owner of the property, such sale implies necessarily a covenant that the purchaser shall have the use of such street. The reason is that the existence of the street, either present or prospective, is presumed to have entered into the consideration of the purchase and thus the grantor has been compensated for the use of the street. If such is not the fact, he can easily protect himself by showing in his deed, or in some way, the absence of intention to dedicate to the public use. The public authorities are not parties to the original transaction, but inasmuch as the law implies a covenant on the part of the grantor that the grantee has the right of way over the bed of the street and the right to use it *as a street* the public necessarily gets the benefit of the covenant. If while such relation exists between grantor and the grantee, or those claiming under him, the public authorities take steps to open the street, the grantor is only entitled to nominal damages because his covenant that it can be used *as a street* is still in force, and he will not therefore suffer any damage by such use. But if one party acquires all the land, including the bed of the street, before the public has in any way accepted the proposed street, upon what principle can he be deprived of his property without full compensation? It could scarcely be contended that if an owner of land divided it into lots, streets and alleys, and placed a plat of them on record, but sold none of the lots, that the public authorities could for that reason take possession of the streets or refuse to pay for them. It was held in *Hawley's case*, 33 Md. 270, and followed in other cases, including the late one of *Mayor, etc., of Baltimore* v. *Frick*, 82 Md. 77, that "the doctrine of implied covenants will not be held to create a right of way over all the lands of the vendor which may lie, however remote, in the bed of a street. The lands must be contiguous to the lots sold and there must be some point of limitation. The true doctrine is, as we understand it, that the purchaser of a lot calling to bind on a street not yet opened

by the public authorities, is entitled to a right of way over it, if it is of the lands of his vendor, to its full extent and dimensions, *only until it reaches some other street* or public way. To this extent will the vendor be held by the implied covenant of his deed, and no further." In pursuance of that doctrine, the dedication in the two cases mentioned was held to extend only to one square of the streets on which the lots fronted, although on the plat, they were considerably longer and the city of Baltimore was required to pay substantial damages for the other parts of the streets taken. If, then, grantees and the city are thus limited, it would seem to follow that if there be no sale at all, no part of the street could be taken without the payment of full compensation. And if there be sales and subsequently the title to the whole land including the bed of the street is vested in one person, how can any part of the street be taken ? The city derives its right to the street through the grantee, and the portion of it it can take, without payment of full compensation, is only coextensive with the part the grantee is entitled to use. When the grantee's right ceases to *every part* of it, how can any right in the city still exist ? Of course, we are speaking with reference to the·facts of this case, which are admitted to be that the streets and alleys never were opened and the land has been in such condition that it has been impossible to use the streets and alleys.

But ·*Hall's case*, 56 Md. 187, would seem to be conclusive of this. Edward Hinkley was appointed trustee to sell the "Greenwood" estate and had the property laid off into lots, streets and alleys and a plat made for the purpose of the sale of the lots. The lots were offered at public auction, but withdrawn for want of sufficient bids. He afterwards sold at private sale twelve lots, and then sold to one VanCamp a considerable body of the land, including the title to the bed of Wolfe street, which was being condemned in *Hall's case*. On the 30th day of March, 1848, VanCamp conveyed to one ·Leach three parcels of land, one of which extended to and bounded on the west side of Wolfe street, and

another bounded on the east side of Wolfe street.   The Court cited several cases, beginning with *White* v. *Flannigan*, and said that from those decisions it would follow that the deed from VanCamp to Leach of March 30, 1848, standing alone, would furnish evidence of the intent to dedicate. But on the 21st day of August, 1849, VanCamp conveyed to Leach in fee the bed of Wolfe street, together with other property—thus vesting in him the fee of the whole property south of John street, including the bed of Wolfe street, and the property on each side of it.   It was afterwards acquired by the Halls.   Wolfe street had not been opened or used as a street and its condition was such that it could not be so used. This Court said: " The implied covenant arising upon the deed of March 30, 1848, in favor of Leach, was rescinded and abrogated by the deed of August 21, 1849, whereby Leach acquired the fee-simple title to the bed of Wolfe street ; and consequently all right of the public to the use of the street, as the same could be derived only from the implied covenant of the parties, no longer existed."

The principle involved in that and this case is the same. It matters not that in the *Hall case* only about seventeen months elapsed before the title became vested in one person, whilst in this case over forty years had elapsed as to one street, and about fifteen years as to the others.   The theory of the appellant is that the dedication commenced at once, and that it was " perfect and complete without either acceptance or user by the public," as was said in *Frick's case*. That is undoubtedly true, and as long as the implied covenant between the grantor and grantee exists, the city can accept, unless there has been an abandonment or an estoppel of some kind, but as " the dedication to the public springs from, and is supported by the title conveyed to the grantee," and must depend upon the existence of that covenant, it must cease with it, if there has been no acceptance during the time it was in the power of the city to accept.

There is nothing in *Frick's case* or *Flersheim's case*, decided at the last term of this Court, that conflicts with this

view, as the appellant seems to think, for in those cases, as well as others,. where it was said that delay in opening the streets had not defeated the rights of the public, the title to the whole lands, including the beds of the streets, had not become vested in one person.

Equity and justice certainly require that under such conditions as exist in this case, the owner of the property should not be compelled to wait indefinitely the pleasure of the public authorities and thus have his property burdened by what may be useless to the city, and yet be difficult, if not impossible; to satisfactorily remove without great expense or delay. We find nothing in the decisions of this Court to require us to adopt such an inequitable rule.

The Act of 1890, chapter 628, in reference to streets, avenues and alleys in the portion of Baltimore County annexed to Baltimore City has no application, as the proposed streets and alleys had not " prior to such annexation become streets, avenues or alleys," in the county, and it is therefore unnecessary to discuss it. The *pro forma* decree must be affirmed.

*Decree affirmed with costs.*

(Decided June 23, 1897).