ATTORNEY GENERAL *vs.* VINEYARD GROVE COMPANY & others.

Suffolk.     December 8, 1911. — May 23, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Equity Jurisdiction,* To enforce alleged dedication for public use. *Equity Pleading and Practice,* Master's report: exceptions, motion to recommit.

Upon an information by the Attorney General against a land company and others to compel the keeping open of a certain parcel of land extending along the sea and overlooked from a part of the lots at a seashore resort, a master found that .from the year 1869 the lots were sold with reference to certain plans, and that on these plans the locus was not marked as a public park or otherwise and was separated from the lots marked on the plans by a street and by other land upon the other side of the street not laid out into house lots, that from 1869 to 1885 the proprietors, and their successor the defendant land company, built and permitted to be built about twenty buildings upon the locus extending from one end of it to the other, and that there was no time from 1870 to the filing of the bill when there had not been buildings upon it. A master found that the plaintiff had failed to prove a dedication of the locus for a public use. *Held,* that the general finding of the master that the plaintiff had failed to prove a· dedication was not inconsistent with any fact found by him but on the contrary was supported by all the basic findings and must stand.

Upon an information by the Attorney General against a land company and others to compel the keeping open of a certain parcel of land, extending along a portion of the sea, where there formerly had been a fresh water pond covering more than ten acres, and overlooked from a part of the lots at a seashore resort, the plaintiff contended that by virtue of a dedication of the owners and an acceptance by the public the locus had been set apart for public use. A master made a general finding that the plaintiff had failed to prove a dedication. The master had found that when the former pond was dredged sand was dumped on the locus and on "what was originally part of the bed of the lake." The only allusion to this matter was in an exception of the plaintiff to the general finding of the master, in which one of the grounds of exception was stated to be, "because . . . it appears that the Commonwealth has title to at least a part of the land in dispute, as the former bed of a great pond, without reference to the doctrine of dedication." *Held,* that the exception to the general finding related only to the question of dedication and could not be sustained upon a ground which had no reference to that question.

An exception to a master's report in a suit in equity founded on the failure of the master to make a certain finding cannot be sustained when the evidence to which the exception relates is not before the court.

Where a suit in equity has been referred to a master under an order which directs him to report "so much of the evidence as he may deem necessary," an exception to his report on the ground of his failure to report certain evidence cannot be sustained, especially when, as in the present case, it does not appear that

the report of such evidence was necessary to bring clearly before the court any
  question of law raised before the master.
A motion in a suit in equity to recommit the case to a master, for the purpose of
  determining a question suggested by a certain finding in the master's report
  but having no bearing on the principal question raised by the pleadings and
  tried before the master or upon the finding of the master on that question,
  properly may be denied by the trial judge in the exercise of his discretion.
Where a suit in equity was referred to a master under an order directing him to
  report "so much of the evidence as he may deem necessary" a motion to re-
  commit the case to the master for the purpose of reporting certain testimony
  is addressed to the discretion of the trial judge, which here was held to have been
  exercised rightly.

HAMMOND, J.  This is an information, brought by the Attorney
General in behalf of the Commonwealth and the public, alleging
in substance that by virtue of a dedication of the owners and an
acceptance by the public, a certain parcel of land therein described,
and in particular a certain part thereof used as a footway, has been
set apart for public use; and seeking to enjoin the defendants from
interfering with such use.  The answers deny dedication and ac-
ceptance, and allege that the defendants have a clear title free
from public use.  The case is before us upon a reservation by a
single justice upon the pleadings, a master's report, the plaintiff's
several motions to recommit the master's report and for a final
decree.

The main question is whether the land or any part of it has been
set aside for public use as alleged in the bill.  Before proceeding
to a critical examination of this question it may be well to give a
general outline of the situation as disclosed by certain facts found
by the master * about which there appears to be no dispute.

The locus is about fifteen hundred feet in length, with an aver-
age width of eighty feet, and is a part of a large tract of land con-
taining several hundred acres, formerly called Vineyard Highlands,
situated in the easterly part of the town of Oak Bluffs on the
island of Martha's Vineyard.  The whole tract has an extended
view of the ocean.  The locus was formerly bounded on the east
by a fresh water pond covering more than ten acres, called Lake
Anthony, which was separated from the ocean by a narrow strip
of beach or low land; but in the year 1902 the Commonwealth
dredged the pond and cut a passage through this strip of land to the

---

* H. D. McLellan, Esquire.

ocean; and ever since that time this body of water has formed a part of the ocean. To the east and southeast of Lake Anthony lies that part of the ocean known as Vineyard Sound. From a part of Vineyard Highlands the view of the ocean lies over the locus and over Lake Anthony, while from at least an equally large part of Vineyard Highlands a view of the ocean does not lie over the locus and Lake Anthony. For many years previous to 1869 certain land adjoining Vineyard Highlands had been used in the summer for camp meeting purposes. In the spring of 1869 the fee of Vineyard Highlands became vested in five persons as tenants in common. They desired to develop a summer resort, and first as individual owners and afterwards as members of a corporation to whom their interest had been conveyed (St. 1870, c. 110), they plotted much of the land into small lots and advertised the lots for sale. They made plans, the place became popular, and many lots were sold, the deeds referring to the plans. Many houses have been built, and for many years a large number of people have occupied the place as a summer resort, in addition to those who reside there all the year. In a general way it may be said that the idea of the owners in 1869 has been successfully carried out, and the scheme for a populous summer resort has been realized. The master finds that it was the intention of the promoters "to so lay out the lots as to make them attractive to prospective purchasers. One of the most important elements in the value of any lot was the view of the ocean obtainable therefrom," and "other things being equal, lots from which a good view of the ocean could be obtained sold for higher prices than lots which were afforded a poor view, or no view, of the ocean." The master further finds that "some, if not all, of the original proprietors referred to the location of the lot sought to be sold and spoke of the good view of the ocean afforded by the manner in which the lots were laid out." In a word, we are dealing with a case where the value of the land sold depended scarcely, if indeed at all, upon its adaptability for purposes of business, or even for a permanent home during the entire year, but upon its æsthetic attraction as a resting place for a short time in the summer, among which attractions a sight of the broad ocean is to many very grateful. Such is the general atmosphere surrounding the case.

The real question, however, is not what is the general nature of

the scheme, but whether the facts found by the master, when interpreted in the light of the circumstances including the scheme, show a dedication of the locus. The master finds in substance that the representations made upon the plans were the representations of the landowners, and that the lots were sold with reference to the plans. And the plaintiff contends that the plans themselves show an intention to dedicate the locus to public use. But we are of opinion that neither of the plans indicates such an intention. The locus is not marked as a public park. It is situated some distance from the lots marked out upon the plans, and is separated from them by Commercial Avenue and other land upon the other side of the avenue not laid out into house lots. Nor is the relation of the locus to the lots marked out such as to indicate a purpose to dedicate it to the public. The case varies materially from *Attorney General* v. *Abbott*, 154 Mass. 323, cited by the plaintiff. For discussion of the principles of this branch of the law see *Boston Water Power Co.* v. *Boston*, 127 Mass. 374, and *Pearson* v. *Allen*, 151 Mass. 79, and cases cited.

The acts of the proprietors were from the first inconsistent with the view of dedication to the public. In the spring of 1870 the Wyoming House was completed and used as a boarding house for carpenters engaged in building a plank walk and wharf for the company. In the years 1870, 1871 and 1872 other structures were erected from time to time upon the locus and respectively occupied for various purposes. The master sums up his findings upon this, in the following language: "Beginning in the autumn of 1869, shortly after the original proprietors had acquired the tract of land which includes the locus, either the original proprietors, or their successors, the defendant corporation, erected, or permitted to be erected, buildings upon the locus of the character and at the times and in the places shown on the plan filed herewith, marked 'Exhibit 45.' This plan, including the figures, dates, and statements thereon, except in so far as it shows the location of the railroad, is founded upon testimony which I find to be true, and accordingly I make the same a part of this report." By an inspection of this plan it appears that from 1869 to 1885, nearly, if not quite, twenty buildings were erected upon the locus extending from one end of it to the other, many of which were still standing at the time of the hearing. And there has been no time since 1870

when there have not been buildings thereon. Indeed the use of the locus has been entirely inconsistent with the idea that it was intended for the public use.

It is unnecessary to recite the evidence or to allude to the basic findings more in detail. The general conclusions of the master are stated as follows:

"The facts heretofore stated as found by me seem to me preliminary or basic facts, and any facts found hereafter are inferences of facts which I draw from facts already found. If, as a matter of law, the facts already found establish, or fail to establish, a dedication of the locus, this is a matter with which I have no right to deal under the order of the court hereto annexed. It is assumed that the facts already found do not present a case where the court must say, as a matter of law, either that a dedication has or has not been established, and it is assumed that the case presented herein still requires further findings of fact. If such assumption is correct the following findings are a part of this report. If such assumption is erroneous then the following findings, based as they are upon preliminary findings of fact hereinbefore made, are to be disregarded.

"I find that the plans filed herewith, marked 'Exhibits 1 and 4,' respectively, wherein it appears that the locus is not marked out into cottage lots, are as consistent with the fact that the original proprietors and the defendant corporation had not decided as to the use to which the locus should be put, as with an intention to dedicate the same to the public.

"I find that the plans filed herewith are as consistent with an intention to use the locus, bordering as it does on Commercial Avenue, for business purposes, as with an intention to dedicate the locus to the public.

"I find that the plans filed herewith, and marked 'Exhibits 1 and 4,' respectively, do not amount to the declaration of an intention of either the original proprietors or of the defendant corporation to dedicate the locus to the public.

"I find that neither the plans filed herewith, nor such plans taken in connection with the other facts hereinbefore found by me, satisfy me that either the original proprietors or the defendant corporation secretly or openly intended to dedicate the locus to the public.

"I am unable to find an intention on the part of the owners of the locus to dedicate the same, or any part thereof, to the public, for the purposes of a view or otherwise. I cannot find that any of the defendants or their predecessors in title so conducted themselves as to lead the public to believe that a dedication of the locus, or of any part thereof, was intended. Inasmuch as I am unable to find that there has been an offer to dedicate, I cannot, of course, find an acceptance by the public of such an offer."

The question of dedication in this case is one of mixed question of law and fact. The general finding that the plaintiff had failed to prove dedication is not inconsistent with any fact found, but on the contrary is consistent with and supported by all the basic findings, and it must stand. And this general finding is applicable to the whole locus, including the footway. The plaintiff has failed to prove dedication.

One other question of substance remains. It is contended by the plaintiff that a certain portion of the locus was originally in the bed of Anthony Pond, a great pond, the title to which was in the Commonwealth; and that as to that portion the plaintiff should prevail. As to this the master finds that at the time the pond was dredged the sand "so dredged" was "dumped . . . on the locus and in part on the site of the plank walk . . . including what was originally part of the bed of the lake." He does not find to what extent the present locus covers the original bed of the pond. This question is not material to any of the exceptions to the report. The only allusion made to this matter in the exceptions to the report is found in the third exception. This third exception is to the general findings of the master which have been hereinbefore set forth, and one of the grounds of this exception is "because, upon the facts previously found by the master in his said report, it appears that the Commonwealth has title to at least a part of the land in dispute, as the former bed of a great pond, without reference to the doctrine of dedication." But the general findings relate only to the question of dedication, and it is manifest that an exception to such findings cannot be sustained upon a ground which in the language of the exception has no "reference to the doctrine of dedication."

All of the plaintiff's exceptions * to the master's report must be overruled, the first, because the evidence relating thereto is not before us; the second, because the order of reference to him simply instructed the master to report "so much of the evidence as he may deem necessary;" and it does not appear that he deemed it necessary to report that named in this exception, nor does it appear that the report of such evidence was necessary to bring intelligently before the court any question of law raised before the master; and the third, for reasons hereinbefore stated.

The motion that the report of the master be recommitted "for the purpose of determining the boundaries of that portion of the parcel of land in dispute, the title to which is in the Commonwealth, by reason of its having been originally a part of the bed of a great pond," was rightly denied. The great question raised by the pleadings and tried before the master was not whether the Commonwealth was the proprietary owner of the locus, but whether, by reason of dedication, the public as such had acquired any interest in the locus. After the filing of the report the single justice might properly decline, in the exercise of his discretion, to recommit for the purpose named in the motion. The purpose had no bearing upon the finding of the master as to dedication. The second motion to recommit for the purpose of reporting the testimony of Gale, for reasons similar to those above stated as to the second exception, was properly overruled. The matter was within the discretion of the court. *Bakshian* v. *Hassanoff*, 186 Mass. 255. It follows also from what has been said that the plaintiff's motion for a final decree in accordance with the prayers of the bill must be denied.

In view of the contention of the plaintiff, care however should be taken to have the decree so framed as not to interfere with any right which the Commonwealth as an owner may have in and to any part of the locus which is within the limits of what was formerly the bed of the great pond.

---

* The first exception was to the master's failure to find with reference to the buildings upon the locus, "that the buildings were regarded as of a temporary character and that ultimately the view would be secure." The second exception was to the failure of the master to report certain testimony of one Gale relating to the temporary character of the structure. The third exception is explained above.

> *Exceptions to the master's report overruled; orders denying motions to recommit and denying the motion to strike out a part of the report affirmed; motion of the plaintiff for final decree denied.*

*S. R. Wrightington & H. M. Dean,* (*H. M. Dean, Jr.,* with them,) for the plaintiff.

*W. H. Powers,* (*W. Powers* with him,) for the defendants.