NORTH BEACH *v.* NORTH CHESAPEAKE BEACH LAND & IMPROVEMENT COMPANY ET AL.

[No. 28, January Term, 1937.]

102

*Decided May 17th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, and SHEHAN, JJ.

*John B. Gray, Jr.,* with whom were *John B. Gray & Son* on the brief, for the appellant.

*T. Van Clagett, Jr.,* with whom was *Lansdale G. Sasscer* on the brief, for the appellees.

PARKE, J., delivered the opinion of the Court.

The appeal is from a decree which sustained the demurrer to an amended bill of complaint filed on the equity side of the Circuit Court for Calvert County by North Beach, a municipal corporation, against the North Chesapeake Beach Land & Improvement Company of Calvert County, and the North Beach Amusement Company, and the County Trust Company of Maryland, all three bodies corporate of the State of Maryland. The amended bill of complaint contains allegations which, if well pleaded, are admitted to be true for the purpose of the demurrer, and which, therefore, must be stated in substance. In this summary, the first-named defendant

will be called the "Land Company"; the second, the "Amusement Company," and the third, the "Mortgagee."

On the 5th of May, 1900, the Land Company obtained a grant of a large tract of land in Calvert County which bordered on the Chesapeake Bay. The purchase was made for the purpose of laying out a part of the land into town blocks and lots which would border upon a system of intersecting avenues or streets. After the development had been laid out on the ground into sixty-nine blocks, which were divided and bounded by streets or avenues, which intersected one another at right angles and ran north and south and east and west, the whole was surveyed and platted and called North Chesapeake Beach. The plat was duly recorded with the grant.

The eastern boundary of the proposed development was the waters of the Chesapeake Bay. The shore line was about 3,800 feet in length. Blocks Nos. 1-6 were numbered consecutively from south to north and were nearest the Bay and fronted on Bay Avenue, which ran north and south and whose western boundary line was the front or eastern boundary line of the lots of these six blocks. Its eastern line was not shown. All the twenty-one avenues were fifty feet in width, except Galveston Avenue, which ran east and west on the southern boundary and was fifty-one and one-half feet in width, and Bay Avenue, which had no indicated width nor eastern boundary line. The waters of the Bay were about 100 feet away from the western boundary of Bay Avenue for about 1,500 feet from the southern end of Bay Avenue, and from that point to the northern terminus of Bay Avenue the shore line receded sharply to the northeast until approximately seven hundred feet of the western boundary of Bay Avenue, leaving a triangular piece of land, east of Bay Avenue, and in the northeast corner of the tract.

This triangular piece was east of blocks Nos. 4, 5, and 6, and between them and the Chesapeake Bay. In 1905 the owner laid off this triangular piece into a new subdivision of five blocks, C, D, E, F, and G. Bay Ave-

nue, which bounded the triangle on the west, was laid out with a width of forty feet. Three avenues on the first plat running east and west were extended, with a width of fifty feet, to the east until Chesapeake Avenue, a new street, which ran along the eastern boundary of the subdivision, was reached. Chesapeake Avenue had its western boundary in the front line of the lots in blocks C, D, and E, and this boundary line is the hypotheneuse of the triangular subdivision. A plat of this subdivision was put upon record on July 7th, 1905. The plat is confined to the delineation of the subdivision and its location with reference to the first division. The dimensions of the lots are shown, as well as the width of the streets, except Chesapeake Avenue, whose width and eastern boundary line are not indicated. This avenue extends on the plat southwestwardly about 1,700 feet with no defined eastern boundary line. There are no lots laid down on this plat between Chesapeake Avenue and the Bay, whose water line is east of the western line of Chesapeake Avenue from approximately one hundred feet at its northern extremity to about thirty feet where Chesapeake Avenue unites on the south with Bay Avenue, where Richmond Avenue enters Bay Avenue from the west between blocks 3 and 4 of the first plat. Chesapeake Avenue was the only right of way for ingress and egress available to a number of the lots in the second or last subdivision.

In 1908 the owner made a number of changes in the size and location of the lots, laid out new streets, and caused the new division to be platted, by a consolidation of the two plats of 1900 and 1905, in a new plat of the entire development with all the changes shown. In the original plats, no alleys were provided; these were supplied. Six new streets were opened which ran east and west. The number of the lots in most of the blocks was increased. The dimensions of these lots were changed and their location was altered to conform to the new streets and alleys. All these modifications are represented in the plat of 1908, which was duly recorded

among the Land Records of Calvert County. In most instances the width of the streets is shown on the plat, but the widths of the alleys and of Bay Avenue and Chesapeake Avenue (Annapolis Avenue) are not marked on the plat, but are furnished by the prominent legend on the map to this effect: "All alleys shown are fifteen feet wide. All streets are fifty feet wide, except as otherwise marked." Bay Avenue is a water front street from the southern boundary of the whole development 1701.5 feet northward along the eastern front line of blocks 1, 2, and 3, to the north side of Richmond Avenue on the southern line of block 4. Chesapeake (Annapolis) Avenue is the other water front street. From where it enters Richmond Avenue, when prolonged to the waterside, it extends northeastwardly 1,700 feet along the southeastern line of blocks C, D, and E to the south side of Brooklyn Avenue at the northeast corner of the whole development. While the eastern line of Bay and Chesapeake Avenues along the shore line of the Chesapeake Bay is not drawn nor indicated on the plat, the distance between the western line of the two streets to the water line is everywhere shown by the plat to have been in excess of the maximum street width of fifty feet.

In a conspicuous place on the plat is the notice in capitals: The Company Reserves All Rights to the Shore Front.

The Land Company sold and conveyed lots fronting on Bay Avenue and lying in blocks 1, 2, and 3 by reference to the recorded plat of 1900; and lots in blocks C, D, E, F, and G, including lots fronting on Chesapeake Avenue, by reference to the plat of 1905 and final plat of 1908.

The plaintiff, North Beach, first became a municipal corporation under and by virtue of chapter 395 of the Acts of 1910, pp. 656-664. By the terms of this statute all that portion of North Chesapeake Beach, as shown by the plat of 1900, which was east of the west line of Detroit Avenue, and the waters abutting thereon eastward for a distance of 2,000 feet (later increased to 5,000 feet), was brought within the corporate limits and police

power of "The Town of North Beach," and the inhabitants of the territory so incorporated. Its name was later changed to North Beach (Acts 1912, ch. 557), and its corporate powers defined and enlarged by chapter 480 of Acts of 1933; Code of Local Laws (Flack), art. 5, secs. 178-220.

Upon the grant of its charter, North Beach accepted, improved, and maintained Bay Avenue and Chesapeake Avenue as shown on the plats mentioned. It constructed, before 1921, along Bay and Chesapeake Avenues, concrete sidewalks for the use of pedestrians, and, so far as its available funds would permit, improved the beds of these streets for vehicular traffic. Because of the disappearance of a point of land which extended into the Bay a short distance above the northern boundary of North Beach, the frontage of the town on Chesapeake Bay has been exposed to the direct action of wind and water, and the shore line has been eroded. The plaintiff constructed a concrete sea wall about fifty feet east from the west side of Bay Avenue, but this sea wall proved inadequate and was gradually demolished by the force of the waves, and, a short while before the filing of the bill of complaint, the plaintiff had procured of the State Roads Commission the construction of a steel sheet piling bulkhead to protect the public thoroughfare from Galveston Street about 1,200 feet northward along Bay Avenue. North of this distance along Bay Avenue to Chesapeake Avenue, and thence along Chesapeake Avenue, where the water front is only a few feet above tide level, the prevention of erosion and encroachment of the water is difficult, and only an adequate and comprehensive plan will protect the private property fronting on Chesapeake Avenue, prevent the street from being washed away, and permit the latter to be improved for public use. Notwithstanding the measures heretofore taken by the plaintiff and property owners to protect Chesapeake Avenue, the encroachment of the waters of the Bay has reduced the width of Bay Avenue and Chesapeake Avenue, at points, to less than fifty feet, and at other points

there have been accretions which have made a fine sand beach, that affords a popular and desirable place for bathing. At the time of the institution of the proceedings much of Chesapeake or Annapolis Avenue had been washed away, and access to the properties along the water front and adjacent to Chesapeake Avenue is by a series of temporary wooden sidewalks on piles. The existence of the valuable bathing beach is jeopardized by its exposure to the action of wind and water. Unless protective devices are employed, there is imminent danger not only of the beach and the bed of Chesapeake Avenue being washed away, but also of the lots binding on this highway becoming submerged.

The municipality owes its origin and growth to its location on the Chesapeake Bay and the advantages and attraction of that body of water. The erosion of the water front, and the submersion of the land dedicated to highway uses, and the danger of further erosion and submersion and its extension to commercial and residential sections, have, as portrayed by the bill of complaint, created a municipal situation from which have arisen problems with reference to the highways affected, and to the preventive measures necessary to bar further encroachment of the waters of the Chesapeake Bay. The probabilities which are latent in the situation are reflected in a diminishing value of property that is subject to taxation. With the exception of the bulkhead constructed by the State Roads Commission, the measures heretofore adopted have afforded temporary and insufficient relief. The municipality has, therefore, adopted a plan to construct a succession of seven permanent creosoted timber jetties, which will begin at the northern extremity of the steel bulkhead erected by the State Roads Commission and which will be placed along the shore front at intervals of about 300 feet. As disclosed by the plat, the land end of the jetties will not be less than 50 feet from the western boundary line of Chesapeake Avenue, and the jetties will project into the water and be about 150 feet in length. The plaintiff is informed by expert opinion that

the system outlined will not only prevent further erosions, but will also gradually add to the fast land and restore Chesapeake Avenue, and permit its road bed to be improved so that vehicular travel may be resumed.

The bill of complaint avers that the Land Company asserts and maintains that it owns and controls all the land which lies east of the west side of Bay Avenue and Chesapeake Avenue to the exclusion of the municipality and its citizens. About the year 1927, the Land Company erected a pavilion for dancing. It is supported by concrete pillars and wood piles. The bill of complaint states this building was "constructed in the bed of the water front streets of said town, at or near the intersection of Chesapeake Avenue and Bay Avenue and just south of the southernmost side of Richmond Avenue extended eastward toward the Bay. * * * It effectually blocks all possible direct access by vehicular or pedestrian traffic from Bay Avenue into Chesapeake Avenue," and occupies a large area of the beach, which has recently accumulated, and which should be available and is needed in order to afford reasonable access by the public to the beach and waters of the Chesapeake Bay. These allegations must be read in connection with the plat filed by the complainant as part of the bill. This exhibit shows that, if Bay Avenue is fifty feet wide, the pavilion does not encroach on any street, but is in the angle formed by the east side of Bay Avenue with the south side of Richmond Avenue, when prolonged to the water front. The plat represents the pavilion as a rectangular building whose western front is in the east line of Bay Avenue and whose northern side is in the south line of Richmond Avenue. As so situated, the pavilion is not an obstruction of any public way, but it occupies the space where the second jetty is to be put.

The bill of complaint further shows that the municipality issued a building permit for the erection of the pavilion, and that it has been assessed for the purposes of taxation, and that municipal taxes have been paid on the improvement.

The occasion for the institution of the suit at bar is furnished by the following circumstances: The complainant submitted its proposed jetties to the Works Progress Administration of the United States Government, and the municipality is informed that the said project had been tentatively approved and that construction thereon might be shortly authorized, but that the Works Progress Administration will not permit the use of federal funds except on publicly owned or publicly controlled property. Accordingly, the plaintiff is advised that its project cannot be executed with federal funds unless the plaintiff's right to the use and control of its water front streets for proper municipal purposes shall be established by these proceedings; or, failing such judicial determination of the matter, that the plaintiff acquire the rights of the defendants in the streets. As a first step, the plaintiff notified the Land Company to remove the pavilion, and the company refused but advised the plaintiff that the company had bargained and sold, and, since the beginning of the suit, had granted and conveyed, unto the Amusement Company, all its rights and interests in and to the land east of the eastern lines of Bay Avenue and Chesapeake Avenue, including the land upon which the pavilion was built, and all of the grantor's "riparian and water front rights." The Amusement Company is a party defendant in these proceedings, as is the County Trust Company of Maryland, which has a mortgage lien of $6,000, now reduced by payments to $1,000, on the lot on which the pavilion is located under mortgage deed of February 6th, 1929.

Upon the assumption that these allegations state an injury for which the plaintiff has no plain, adequate, and complete remedy at law, and will suffer irreparable loss and injury unless the defendants are restrained from interfering with the improvement and use of highway and related purposes of Bay Avenue and Chesapeake Avenue, and unless the defendants are required to demolish or otherwise remove the dancing pavilion, the plaintiff prays for the relief (a) that pending the

suit and perpetually thereafter the defendants may be enjoined from interfering with the construction of the system of jetties described or with the improvement and use for highway purposes of Bay Avenue and Chesapeake Avenue; (b) that the defendants demolish or remove the structure known as a dancing pavilion, and, upon their failure within a prescribed time, they be enjoined and restrained from interfering with the removal thereof by the plaintiff; and (c) that similar relief be granted to the extent the court may determine the pavilion occupies any part of the thoroughfares known as Bay Avenue and Chesapeake Avenue; and (d) that the plaintiff may have general relief.

The recital at such length of the allegations of the amended bill of complaint is required in order that the particular problems presented may be fully comprehended. It will be perceived that the plaintiff seeks an adjudication that it has the right to the occupancy and control, for municipal purposes, of all that portion of the land of the Land Company and the Amusement Company which lies between the western boundary lines of Bay Avenue and of Chesapeake Avenue and the water line of the Chesapeake Bay. The asserted right does not rest in grant nor in prescriptive title, and there is no dispute that the title in fee is in the defendants. The right is put upon a dedication by the owner of this area to the public use. So, the pretension leaves the fee in the Land Company, and its successors and assigns, subject to the public use of this entire area for highway purposes, and the enjoyment of the beach and the bay shore. The intention to make this dedication is inferred from the recording of the plat of 1900, and that of 1905, and the conveyance to purchasers of lots whose front was in the western line of Bay Avenue and of Chesapeake Avenue, as depicted on the plats. The 1900 plat is one of the entire development, and all of its ways begin and end within its bounds. The outlets are by way of the Bay and a single roadway on the west, which approaches the tract at its furthest point from the Bay. A pier and wharf are shown

on the plat extending from the foot of Richmond Avenue. Three long buildings are pictured in the northeast section between Bay Avenue and the Chesapeake Bay, which was laid out in streets and blocks by the plat of 1905. While neither the width nor eastern line of Bay Avenue is given, all the other ways have an indicated width of fifty feet, except Galveston Avenue, on the southern border, which is 51.5 feet wide. There is no allegation that there was an acceptance in any manner by the State, county, or other municipal corporation of these ways or of the space between Bay Avenue and the Bay.

These circumstances tend to negative the imputed intention of the owner to dedicate, as now asserted, and the most that could be inferred would be that the intention of the owner was undisclosed with respect to the width of Bay Avenue, and the use of that portion of the tract between this way and the waters of the Bay. Before any official acceptance of any form of dedication, the owner removed all possible ambiguity by an act which established that the intention now ascribed by the municipality had not existed. For by the recorded plat of 1905, the area involved from Richmond Avenue north to Brooklyn Avenue and east of Bay Avenue was, for the purpose of sale, laid off into five blocks of 204 town lots. The width of Bay Avenue was fixed at 40 feet and Richmond, Baltimore, Philadelphia, and Brooklyn Avenues were given their original width of 50 feet to the new Chesapeake Avenue, whose width and eastern line was not marked. The blocks D and E were separated from G and F by Atlantic Avenue, which ran diagonally from Baltimore Avenue northward to Brooklyn Avenue, and was 40 feet wide. The subdivision this made embraced the land on which the three buildings stood and was in the assertion of a sole proprietary right. It was a complete refutation of an intention to dedicate the area so appropriated. Again, there was no act of acceptance by public authority, and a third plat was filed in 1908. The changes effected by this final plat were all made west of the western line of Bay Avenue and Chesapeake Avenue, and

have been described. The eastern boundary line of Bay Avenue and Chesapeake Avenue are not delineated on this plat, but the plat defines the width of these two avenues at 50 feet, by the legend inscribed on the recorded plat: "All streets are 50 feet wide, except as otherwise marked." There are streets marked in excess of 50 feet and less than that width, and the legend applies to Bay Avenue and Chesapeake Avenue, and so their established width is 50 feet. All of the land beyond this 50 feet was not designed to be included for highway purpose, but was intended to be retained as the property of the owner, as appears by this plain declaration printed on the plat below the water line of the Bay: "The Company Reserves All Rights to the Shore Front."

Thus the allegations of the bill of complaint demonstrate that the intention to dedicate highways of greater width than 50 feet and the intervening area between Bay Avenue and Chesapeake Avenue and the waters of the Chesapeake Bay had never been entertained by the owner of the estate. The intention of the dedicator must be ascertained from his declarations and acts, which, in the present case, are chiefly three recorded plats, with reference to every one of which lots have been offered, sold, and conveyed by the dedicator. These plats must clearly and unequivocally manifest the dedicator's intention before a dedication may become effective. In both the first and second plats this quality of definiteness is absent with respect to the width of the ways, Bay Avenue and Chesapeake Avenue.

In addition, the plat of 1900 shows Bay Avenue as binding from north to south. The development boundary line of this avenue is in the front line of the lots of the blocks binding upon it, but the eastern line is not shown, nor is there anything on the plat from which it may be known what is the intended width of this avenue. While it does appear that the width of the other highways in the division is 50 feet, with the exception of one which is 40 feet wide, and of another one which is 51.5 feet, these facts merely emphasize the uncertainty.

The space between Bay Avenue and the Chesapeake Bay to the east is not divided and is unmarked. It is obviously not a part of Bay Avenue. The space on the plat is blank, except that three long low buildings are shown in a group at its widest part. There is no substantial basis for an inference to be made of an intention to dedicate this space for any purpose. The absence of any dedicatory expression of a public use as common, park, public beach, and the display of the buildings, are indicative of a retention of the proprietary rights of the owner. It must be held that this first plat is not sufficient evidence of an intention of the owner to dedicate this space as a public beach or common. As was said in *Baltimore v. Frick*, 82 Md. 77, at page 86, 33 A. 435, 437, "No one should be thus deprived of his property, on the ground of a dedication, unless there has been some clear and decisive act indicating an intention to dedicate to public use." *McCormick v. Baltimore*, 45 Md. 512, 527; *Bloede v. Baltimore*, 115 Md. 594, 595, 596, 81 A. 67; *Baltimore v. Gordon*, 133 Md. 150, 153, 104 A. 536; *Tiffany on Real Property* (2nd Ed.) sec. 482.

Furthermore, about five years later the owner placed upon record a plat of this same space, showing that it had been intersected by streets and thereby divided into five blocks of lots for building sites. The northern length of Bay Avenue is shown on the plat and is the western boundary of the new subdivision. The width of the section shown of Bay Avenue is there given as forty feet. As the second plat is confined to the area of the subdivision, the southern section of Bay Avenue is not represented, nor the width of that portion indicated. The effect of this subdivision was to convert an undeveloped section of the first plat into streets and building lots for residential and commercial purposes. There could be no more conclusive refutation of any previous intention of the owner to dedicate this area to public use than this unquestioned exercise of the right of absolute ownership. *Stover v. Steffey*, 115 Md. 524, 81 A. 33; *Canton Co. v. Baltimore*, 106 Md. 69, 66 A. 679, 67 A. 274.

A proposed dedication is, so far as the public is concerned, an offer which cannot be transformed into a dedication until an acceptance by the public. It is the recognized rule of this jurisdiction that, before such an acceptance, the offer, so far as the public is concerned, may be changed or revoked. *Baltimore v. Canton Co.*, 124 Md. 620, 630, 93 A. 144; *Whittington v. Crisfield*, 121 Md. 387-392, 88 A. 232; *Beale v. Takoma Park*, 130 Md. 297, 308, 309, 100 A. 379; *Canton Co. v. Baltimore*, 106 Md. 69, 66 A. 679, 67 A. 274; *Mullan v. Hochman*, 157 Md. 213, 225, 145 A. 554; *Cushwa v. Williamsport*, 117 Md. 306, 311, 83 A. 389; *Clendenin v. Maryland Const. Co.*, 86 Md. 80, 37 A. 709; *Baltimore v. Broumel*, 86 Md. 153, 157, 37 A. 648; *Story v. Ulman*, 88 Md. 244, 41 A. 120; *Hall v. Baltimore*, 56 Md. 187. See 18 *C. J.*, sec. 150, p. 121, n. 65.

To bind the dedicator the offer of dedication need not be accepted by the State, city, county, or other public authorities, but may be accepted by the general public. This acceptance may be shown by an entry upon the land and enjoying the privilege offered. The user by the public concerned pursuant to the offer of the dedicator need not be for such a length of time as would be sufficient to establish an easement by prescription or to acquire title to the land by adverse possession. What is required is for the user to be continued for so long a time as will establish a clear intention on the part of the public to accept. *Baltimore v. Canton Co.*, 124 Md. 620, 93 A. 144; *Cushwa v. Williamsport*, 117 Md. 306, 311, 83 A. 389; *Baltimore v. Broumel*, 86 Md. 153, 37 A. 648; *Kennedy v. Cumberland*, 65 Md. 514, 9 A. 234; *Hall v. Baltimore*, 56 Md. 187, 194; *Beale v. Takoma Park*, 130 Md. 297, 100 A. 379; *Greenleaf on Evidence* (16th Ed.) vol. 2, sec. 662; *Neal v. Hopkins*, 87 Md. 19, 39 A. 322; *Jones on Easements*, sec. 440. Compare *Whittington v. Crisfield*, 121 Md. 387, 88 A. 232. See *Tiffany on Real Property* (2nd Ed.) secs. 366 and 482; *Hawley v. Baltimore*, 33 Md. 270; *Mullan v. Hochman*, 157 Md. 213, 221, 145 A. 554.

There is no averment sufficient to show any form of acceptance by political entities or officials or by public user of this space as it existed before 1905. The facts stated demonstrate that for thirty years this land has been divided, sold, conveyed, and occupied as exclusively private property, with the sole exception of the public ways which traverse and bound it. Furthermore, the plat of 1908 discloses that a new avenue was opened through this subdivision, and that numerous lots were consolidated for the purpose of a different division. And, finally, the bill of complaint reveals that, after the plaintiff was created in 1910, it accepted, improved, and maintained Chesapeake Avenue, which traverses the space under discussion, and is on the southeastern boundary of the subdivision of 1905, as a street for pedestrians and vehicular traffic. *Supra. Steuart v. Baltimore,* 7 Md. 500, 509; *Glenn v. Baltimore,* 67 Md. 390, 397-399, 10 A. 70; *Pitts v. Baltimore,* 73 Md. 326, 21 A. 52; *Baltimore v. Fear,* 82 Md. 246, 256, 33 A. 637; *Baldwin v. Trimble,* 85 Md. 396, 37 A. 176; *Harbor Co. v. Smith,* 85 Md. 537, 37 A. 27; *McCormick v. Baltimore,* 45 Md. 512; *Ogle v. Cumberland,* 90 Md. 59, 61, 44 A. 1015; *Lippincott v. Harvey,* 72 Md. 572, 19 A. 1041; *Steinauer v. Tell City,* 146 Ind. 490, 45 N. E. 1056; *Rose v. Village of Elizabethtown,* 275 Ill. 167, 114 N. E. 14; *Attorney General v. Vineyard Grove Co.,* 211 Mass. 596, 98 N. E. 1070; *Birge v. Centralia,* 218 Ill. 503, 75 N. E. 1035; *Attorney General v. Whitney,* 137 Mass. 450.

The effect of the first two plats was to show an offer to dedicate two public ways known as Bay Avenue and Chesapeake Avenue, binding on the easternmost blocks of the development. The sale and conveyance of lots fronting on these ways was evidence of their dedication as public ways, so far as the dedicator, and its successors, grantees, and assigns, are concerned. Neither on the plat of 1900 nor on the plat of 1905 is the width or eastern boundary line of either Bay Avenue or Chesapeake Avenue indicated by figures or lines, except that, in the plat of 1905, the eastern boundary line and width of Bay Avenue are

given. The western boundary lines of the southern segment of Bay Avenue and of Chesapeake Avenue were, according to the plats, between fifty, at one point, and one hundred feet, generally, from the waters of the Chesapeake Bay. So, only the western boundary lines of the two avenues were delineated on the first two plats, and no width was indicated. Where a roadway is laid out on a plat of a development, with a number of streets in which all but three are shown to be of the uniform width throughout of fifty feet, it might be inferred that the width of forty feet for the northern segment of Bay Avenue would be its width throughout its southern segment; or that, at the most, the width would be the general one of fifty feet. See *Potomac Elec. Power Co. v. Wall,* 153 Md. 229, 233, 137 A. 889; Code, art. 25, sec. 151. However plausible this inference may be, the fact persists that no width can be certainly known from the plats; and, in such instances the safe rule is to find if there has been a user of the thoroughfare by the public, and what is the character and extent of that user, which, if of sufficient length for this evidential purpose, would determine the width. *Western Ry. v. Alabama etc. A. Co.,* 96 Ala. 272, 11 So. 483; *Baltimore v. Yost,* 121 Md. 366, 379, 380, 88 A. 342; *Elliott on Roads & Streets* (3rd Ed.) sec. 179.

The character and extent of the user between 1900 and 1908 is not sufficiently disclosed to establish a width by user. By the final plat filed in 1908, the eastern line of the two streets is not drawn nor is any width indicated, but their relative situation with reference to the waters of the Bay is evidently unchanged. The pier and wharf are represented as having been removed one block south and as extending from the water at the end of Charleston Street. On this plat, however, is found the statement of the dedicator which fixed the width of Bay Avenue and Chesapeake Avenue at fifty feet. This left between the eastern limits of both avenues and the Chesapeake Bay a narrow strip of land to which the absolute title, together with all rights incident to its position as the shore front,

was in the Land Company. *Cityco Realty Co. v. Slaysman,* 160 Md. 357, 362-364, 366, 367, 153 A. 278.

It follows that the offer to dedicate the ways of a defined and certain width is found in the final plat of 1908, which revoked, so far as the public is concerned, the preceding offers of dedication, and, therefore, an acceptance by the public must have reference to that plat, by which the intention of the donor is first fully demonstrated as to the width of the two thoroughfares.

The offer to dedicate continued until it was accepted by the town of North Beach after its incorporation in 1910. The conclusion of the court is that the only difference between the first two plats and the third, with reference to the dedication proposed by the donor, is that in the final plat the width of the two avenues is first specified, and that there is an express, instead of the subsisting implied, reservation of the shore front rights inherent in the title to the land. The fact that the corporate limits of the plaintiff are described by reference to the first plat is, therefore, without significance in the present particular inquiry. The town was incorporated on April 13th, 1910, and included the eastern half of the platted development.

The amended bill of complaint avers that "among the first streets accepted and improved by the plaintiff were Bay Avenue and Chesapeake Avenue as delineated on the plats hereinbefore referred to. That prior to 1921 it constructed along Bay Avenue and along Chesapeake Avenue concrete sidewalks for the use of pedestrians and as far as its available funds would permit, it improved the beds of said streets for vehicular traffic."

So, it follows that the acceptance by the municipality of the dedication offered was of the two avenues, whose width or eastern line was not definitely ascertained in the first two plats, but whose width was specifically stated in the third and final plat and determinative recorded plat of 1908.

The acceptance of the offer of the dedicator by the plaintiff completed the dedication to the public use of

Bay Avenue and Chesapeake Avenue as municipal highways of the uniform width of fifty feet and located on the ground as shown by the plat. *Supra.* Within this width of fifty feet and throughout their lengths the plaintiff has the right and power to make, improve, maintain, and safeguard these public ways in whatsoever manner and by any method which is consistent with their public use as highways. Code Pub. Loc. Laws (Flack) vol. 1, art. 5, secs. 178-220, as repealed and re-enacted by Acts 1933, ch. 480.

Neither the municipality nor the users by private right of these highways could go beyond the dedicated limits of the highways and enter upon, use, or occupy, above high-water mark, the contiguous other land of the donor, its assigns and successors, without either their grant or their leave, or under a condemnation proceeding by the municipality authorizing such entry, use, or occupation. The title to the bed of the highway is in the dedicator, its successors and assigns, since the dedication does not affect the ownership of the land, but merely gives to the public the right of its user for the purpose intended by its dedicator. *Tiffany on Real Property* (2nd Ed.) sec. 486; *Public Service Commn. v. Gas Transmission Corp.,* 162 Md. 298, 316, 159 A. 758; *Walters v. Balto. & O. R.,* 120 Md. 644, 655-657, 88 A. 47.

In the absence of statutory provision, the municipal authorities have no right to take earth, stone, gravel, or other material from private property outside the limits of the highway for the purpose of constructing or repairing the highway. 13 *R. C. L., Highways,* sec. 74, p. 83. *A fortiori* the municipality in the instant case has no right to construct, outside the limits of the highway, the proposed jetties for the purposes of the prevention of further erosion of the highways and of the restoration of the eroded portions by accretion. Such a physical invasion of property is wrongful. *Smith v. Balto. & O. R. Co.,* 168 Md. 89, 93, 94, 176 A. 642; *Murphy v. State Roads Commn.,* 159 Md. 7, 18, 19, 149 A. 566; *Baltimore*

*v. Dobler,* 140 Md. 634, 635, 642, 643, 118 A. 168; *De Lauder v. Baltimore County,* 94 Md. 1, 8, 9, 50 A. 427; *Guest v. Church Hill,* 90 Md. 689, 693, 45 A. 882; *Cumberland v. Willison* 50 Md. 138.

On the contrary, the rights of the defendants as the owners of the fee conferred upon them full dominion and control over the land, and they had all the rights of an absolute owner of the soil, subject only to the easement and servitude in favor of the public. Any attempt by the plaintiff to widen, construct, or repair the way outside of the limits of the highway or to enter upon, use, or occupy land of the defendants outside of the limits of the right of way is a wrong for which the plaintiff is liable to respond in damages. *Supra. Thomas v. Ford,* 63 Md. 346, 355.

In the appeal of *King v. North Chesapeake Beach Land & Improvement Co.,* (1923) 143 Md. 693, 123 A. 455, a plat will be found which presents the eastern section of North Beach sufficiently to give a clearer understanding of the situation at bar. In that case the controversy was between the Land Company and a wagoner, who was employed by the municipal officials of North Beach and others to dig, load, and remove sand and gravel from the strip of land between the eastern boundary line of Bay Avenue and Chesapeake Avenue and the Chesapeake Bay, either above or below high-water mark. The principal theory of the defense was that the whole area involved had been dedicated to public use by plats before that of 1908, and that the Land Company had divested itself of any riparian interest which would entitle it to have the repeated trespasses of the wagoner restrained. There was the further contention that any existing right of the company might have would be confined to the space above high-water mark. Neither the municipality nor owner of a lot was a party to that cause, and the court refrained from an expression of opinion in respect of the nature and extent of the dedication, but held that the Land Company should have equitable relief against the wagoner on the ground that, even if the

assumption be made of a dedication of the entire area from low-water mark to the eastern lines of the two avenues, the Land Company would be entitled to an injunction to restrain the wagoner, since the assumed dedication left the owner in full right of enjoyment of the soil, gravel, and sand so far as it did not interfere with the dedicated use. 143 Md. 693, at page 699, 123 A. 455.

The last question is the location of the pavilion. If the building occupy any portion of the land dedicated to a public use, the plaintiff would be entitled to relief in equity for its removal from that portion. *Carroll County v. Rickell,* 146 Md. 463, 469, 126 A. 711; *Sieling v. State Roads Commn.,* 160 Md. 407, 415, 417, 153 A. 614; *Huebschmann v. Grand Company,* 166 Md. 615, 630, 172 A. 227. While the general allegations of the bill of complaint are that the pavilion is located on a portion of the land dedicated to public ways, that allegation proceeds upon the plaintiff's conception that all of the area between the western border of Bay Avenue and Chesapeake Avenue is dedicated to a public use, and that any structure there built would be an obstruction.

The bill of complaint and the exhibit which portrays the streets, water front, pavilion, and shore and beach, and the location and details of construction of the proposed jetties, place the pavilion within the intersection of the south line of Richmond Avenue with the eastern line of Bay Avenue, and, so, not upon any land dedicated to the public use. The plat shows that the plan proposes to construct a jetty where the pavilion is built and has a right to remain. An interference in the use of the avenues at this point is not due to an occupation of any part of a highway by the pavilion, but to the erosion of waters, which is a problem of the municipality and not of the dedicator. *Tiffany on Real Property* (2nd Ed.) sec. 534.

After the amended bill of complaint was filed, certain lot owners were made parties plaintiff on their application before the demurrer was heard. Their appearance as parties did not import any added equity. They had all

purchased lots in the triangular section which had been subdivided in 1905, and, therefore, could not maintain that their lots were dedicated to public ways or uses, nor were their rights of way different in location nor more extensive than those which the municipality later accepted. *McCormick v. Baltimore,* 45 Md. 512; *Hawley v. Baltimore,* 33 Md. 270, 280; *Baltimore v. Frick,* 82 Md. 77, 33 A. 435.

An application of the controlling equitable principles to the allegations made are not sufficient to show the plaintiff to be entitled to relief, and the demurrer to the amended bill of complaint was properly sustained. For similar reasons, and upon the averments there made, the demurrer to the original bill of complaint was rightly held good.

*Orders sustaining demurrers to the original and amended bills of complaint affirmed with costs to the appellees.*